## O. S. MYNATT et al. v. BELLE WEAVER et al.

Eastern Section. March 21, 1927.

Webb, Baker & Egerton, of Knoxville, for appellant.
M. E. Hartman, of Knoxville, for appellee.

SNODGRASS, J. The original bill sought to partition a little tract of land of twelve acres. The cross-bill sought to set aside as fraudulent the deed under which the complainant claimed an interest in the land; also to recover back what had been paid upon an automobile sold by original complainant to cross-complainant on deferred monthly payments, which she, the mother, had been induced to secure by a mortgage or trust deed on the little tract of land upon which she, an ignorant, unsophisticated widow woman lived with her children. Some of these children were minors, and Alvice, her son, a boy of nineteen, it had been agreed might pay for the automobile on monthly payments. He neglected to keep up the payments, whereupon an alleged foreclosure of the mortgage or trust deed was had under which the complainant (a brother of the automobile vendor) had, it was claimed, purchased the little tract of land at the price of $5. Later, it was claimed, discovering that the widow (Belle Weaver) only owned an undivided interest in the land, her children owning the rest, the bill was filed to sell it for division, under an allegation that it could not be advantageously partitioned in kind.

This original bill was answered by Belle Weaver and her children, denying any right to partition the same, or that it could not be advantageously partitioned. The widow, Belle Weaver, filed a cross-bill, as stated, to set aside the trust deed which she had made and executed to Rector Mynatt, alleging that it had been obtained upon fraudulent misrepresentation, making the said Rector Mynatt also a party. The cross-bill sought also to enjoin a suit in the Circuit Court which had been originally instituted before a Justice of the Peace by the said Rector Mynatt, the automobile vendor, but which had found its way into the Circuit Court, to collect the remainder of the deferred payments, after a credit of $30 had been paid upon the automobile and, presumably, after the credit of $5 which should have been paid as the bid on the land, and after crediting anything that might be due as a result of a sale of the automobile, which the said Rector Mynatt said had been levied upon. At any rate an injunction was obtained and executed against the further prosecution of the Circuit Court case. Guardian ad litem was appointed for the minor defendants, who answered, and the adults also filed answer.

Answer was filed to the cross-bill denying the fraud alleged or the invalidity for any reason of the deed or transaction under which original complainant claimed, and the cause was gotten at issue and tried before the court and a jury upon the issues. The jury made their finding upon the issues submitted in favor of cross-complainant, which of course negatived any of his rights

alleged in the original bill. There was no dispute as to what the title papers showed as to the title before the trust deed being in the widow and the children, and if the original trust deed was a valid deed there was no dispute but what the original complainant had title to Mrs. Weaver's interest, an undivided one-eleventh, but there would still have remained the question as to whether or not the little tract should be sold for division or partitioned in kind.

It appears from the final decree that the following issues were submitted to the jury, in the form of questions, to which they replied as indicated:

"1. What interest, if any, did Belle Weaver have in the tract of land described in the original bill?" A. 1/11 undivided interest.

"2. Who are the owners of said tract of land, and what is the interest of each? A. The following own a 1/11 undivided interest each: O. S. Mynatt, Theophilas Weaver, Alfonso Weaver, Eulice Weaver, Alvice Weaver, Omega Weaver, Clayes Weaver, Houstin Weaver, Douglas Spitzer, Nadine Spitzer and Leola King.

"3. Did Rector Mynatt sell Belle Weaver an automobile, and if so what was the purchase price, how much has been paid said Rector Mynatt, and what is the unpaid balance? A. Yes, purchase price $125. Amount paid $30. Balance amount involved in the Circuit Court case.

"4. Did Rector Mynatt fraudulently misrepresent any material fact as to value, condition or equipment of the automobile sold by him to Belle Weaver? A. Yes.

"5. If you find Rector Mynatt did fraudulently misrepresent the condition, value or equipment of said automobile, did O. S. Mynatt have any knowledge of such misrepresentation at the time of becoming the purchaser of said tract of land? A. Yes.

"6. What was the actual value of the automobile so sold at the time of purchase? A. Twenty-five ($25) dollars."

After overruling the motion for a new trial that was made, the court entered a further decree in substance as follows:

"Thereafter this cause came on to be further and finally heard this 23rd day of April, 1926, upon the entire record, and the court is pleased to and doth find that the jury's answers to said issues are in favor of cross-complainant, Belle Weaver and against said defendants, O. S. Mynatt and Rector Mynatt, and that said issues and findings of the jury are supported by the testimony of the divers witnesses thus examined in open court, and is pleased to

and doth dismiss the original bill filed by the complainant, O. S. Mynatt. It was further ordered, adjudged and decreed by the court that the deed from Rector Mynatt to O. S. Mynatt, dated May 26, 1925, and recorded in the Register's office of Knox County, Tennessee, Deed Book 421, at page 6, and the mortgage deed fraudulently procured by said Rector Mynatt on the 4th day of September, 1924, and of record in the Register's office of Knox county, Tennessee, in Trust Book 316, at page 164, be, and the same and each of them are hereby declared and decreed null and void, and of no force and effect from the beginning; said deeds and each of them are adjudged and declared to be of no more force and effect than if they or either of them had never been made or executed, and the cloud thus cast upon the cross-complainant Belle Weaver's title be and the same is hereby and in every manner and particular removed." The collection of the judgment rendered in the Circuit Court of Knox county, Tennessee, which cross-complainant was ordered to confess in the case styled Rector Mynatt v. Belle Weaver, in the sum of $103, and being No. 4506 on the rule docket of said court, was perpetually enjoined and declared to be null and void and of no effect. The cross-complainant, Belle Weaver, was given a decree against Rector Mynatt for $30, the same being the amount which she had paid to said Rector Mynatt by reason of the fraudulent transaction, but it was provided that if Rector Mynatt elects to leave said automobile in the possession of said Belle Weaver, that the judgment will be credited with $25. It was directed that original complainant, O. S. Mynatt and cross-defendant Rector Mynatt, and J. A. Rutherford and J. H. Fritts, the sureties on the prosecution bond, pay all the costs of the cause, except the costs of the jury, which will be paid by Knox county, and execution was awarded. O. S. and Rector Mynatt excepted, prayed and was granted and perfected an appeal to this court, and have assigned errors.

The assignments of error are ten in number, mostly relating to the court's charge, but the only material question passed upon by the jury and about which it is material to look into the charge, is as to whether or not the original transaction was fraudulent, and whether the conditions were such as affected the purchaser, O. S. Mynatt, with such notice as would conclude him. The first assignment is:

"The court erred in rendering judgment against the defendants O. S. Mynatt and Rector Mynatt, because there is no evidence to support such a judgment, and the court erred in overruling the cross-defendants' motion for a new trial based upon this ground."

The jury's report, we think, was sufficient to sustain the judgment of the court, but assignment No. 2, to the effect that the court erred in failing to sustain cross-defendants' motion to peremptorily instruct the jury to answer issues Nos. 7 and 8 "no," we think sufficiently raises the question, because it was alleged that there was no evidence of fraud, and the court was in error in overruling defendant's motion for a new trial on that ground.

By reference to the bill of exceptions it is shown that at the close of the proof there was a motion made by Mr. Edgerton to instruct the jury to answer issue No. 7 "no," and to answer issue No. 8 "no," and that the court instruct them to answer No. 9 "$125," for the reason, it was claimed, that the undisputed proof in the record showed that there was no fraud committed; that no material fact had been misrepresented; that there was only one question about which there seemed to be the slightest idea of dispute, involving curtains of the value of $7.50, which it was claimed was not material. The court held that it was a question for the jury to pass upon.

After an agreement to treat the issues as signed, the bill of exceptions recites:

"Whereupon the issues were read by Mr. Hartman to the jury, after which the court charged the jury as follows:"

Then followed the court's charge, in which the court did refer to the 7th and 8th issues or questions as involving the questions of fraud, which the instructions asked to be given would have negatived. The issues which the final decree entered of record shows were submitted to the jury were numbered from 1 to 6, and the issues involving the questions of fraud are numbered 4 and 5, which were answered in the affirmative, establishing not only the fraud charged involving the mortgage deed, but that the defendant O. S. Mynatt had knowledge of it at the time of his purchase of the land at the alleged foreclosure. We have treated the matter of the misnumbering as a clerical error, and that the assignments do raise the question as to whether or not there is any evidence to support the verdict of the jury as made in response to questions 4 and 5.

These two issues practically settle the lawsuit, as there was really no dispute about any other material question outside of the facts that bore upon the issues of fraud. We think there was proof to support the verdict of the jury, and the judgment of the court had thereon. To begin with the very setting of the situation stamps the sale of this automobile to this fifty-four year old woman as sinister. We think the proof does show that she was an ignorant, unsophisticated, country woman, a widow, own-

ing this little tract of twelve acres of land as indicated, in connection with her numerous brood of children, and upon which they were living. While original complainant would have us belive that the old lady and her boy were anxious to buy the auto, the proof shows that they did not want to buy it, and that for days the vendor of the automobile (Rector Mynatt) had persistently tried to sell it to them. He had been there the old lady said about two weeks. She testified that he represented it to be a good automobile, in good mechanical order; "first class mechanic order;" said it had a good starter; that there was a pair of brand new curtains that went with the car; said there was nearly a new set of storm curtains in the rear seat of the car, and so there was; that he agreed to let the boy have the automobile and make monthly payments on it, provided she would sign the bond for the boy. On the trial she was presented with an instrument signed, it was said, before Esq. Larue, and asked to file it as Exhibit B to her testimony, which she did, as the instrument signed with her mark.

Her testimony was substantially corroborated by the boy, and from the testimony offered by her it appeared that the old automobile was not worth over $25, which the jury found, and she was procured to sign a mortgage which carried her interest in her little home. After a month's trial of the automobile, characterized by incidents which would try the patience of any one, it was put away as impossible, in the barn. She had never owned an automobile before, or any kind of machinery, nor had she ever driven one. She was of a character we think easily imposed upon and knew nothing about automobiles. She said she knew when a car goes bad when she was in it, and that this was not a good running car. But besides this, a man by the name of Hicks, who had sold the car to original complainant's deceased brother, claimed it, and it does appear that he had never been fully paid for it. She could not get to see Rector, but wrote him. He lived close, but would come in about night and leave about daylight. The boy said it was an Overland car; that complainant wanted to sell it to him, and that he did not much want to buy it, so Rector said he would try to help him borrow some money to pay for the car—to pay down for it; that he (Rector) tried to get some money for him, and could not do any good; that he took him (Alvice) along with him to some loan concern. They failed to get any money, but Rector kept on and wanted to sell it to him. Then he said he would fix him up some notes and let him pay by the month. "So he kept on every night until he sold us the car."

They could not get him to stop there at all after that. The starter would not work; the car was in bad mechanical condition. The boy did not hear all that was said to his mother, but stated that Rector told his mother it was a good car; that there was not anything wrong with the car at all, and said "the car will not give you any trouble;" that he said the starter was in good condition; that he said it was weak, but needed the battery charged; that the starter never did work. As to the storm curtains he corroborated his mother, and said that in about two weeks Murphy Bollinger came down and said they belonged to him, and that he could not do anything else than let him have them. As to the storm curtains there was really no denial, though Rector Mynatt claimed that they were merely in the car when it was traded. The boy testified that Mynatt rode to town with him the first time he drove the car, and that it would not run good then; that he had trouble all the way, and that the car never was any good much; would not run; had a knock in it; bearing burned out, and connection rod burned out; was in very bad mechanical condition; never did run to amount to anything; had trouble with it all along; laid out all night one night trying to get home with it, and never did get home; this was in about a week; made a few trips to work in it; was late every morning, got in some 8 or 9 o'clock; had it in the shop a few times; never could do much with it; used it in this way about a month and set it in the barn at home; had talked to Rector some about it, but he always got mad and would fly off the handle; mentioned it to him the first morning that he drove the car, and he said there was nothing wrong except the battery, and that it would run good; Cloves Mynatt, brother of Rector, worked on it some, but it never did run right.

We think the jury were entirely right in their conclusion that this worthless old car was fraudulently palmed off on these people, nor do we think the brother was an innocent purchaser. He was a brother, and although he professes not to have known a thing in the world about the transaction at the time he bought the land, claiming he was in town and did not know a thing about it, he admits that some days after Rector had sold the car he was out there—generally went out there every Sunday—and his father had told him about the sale. He said that he never knew anything about it, only just rumor, what he would hear them talking. He knew his brother had sold the car; he knew what car it was that he had sold. He paid only $5 for the land, thinking it was the whole tract, a circumstance itself of such speaking significance as that what knowledge of the situation he confessed to would authorize the jury to conclude that he knew all about it, or was suf-

ficiently charged with notice as affected him with responsibility. The situation itself, the old car palmed off on this poor family at such a price, with their little home threatened with the mortgage of the mother's interest, we think authorized the jury to infer that he knew such a trade could not have been effected under the circumstances without undue influence being exerted. We are satisfied with the verdict of the jury. A trade like this should never be allowed to stand except upon the completest and fairest explanation which would negative the idea of the overreaching with which the circumstances inherently charge it. Neither are we impressed with the claim that the property had not been sufficiently tendered back. Rector remained shy of Mrs. Weaver. He admits that the car was not worth $125. In addition to the mortgage he had retained title to the car in the notes; had attached the automobile, and admits that he had never paid for the curtains that were taken from the Weavers. The first and second assignments are overruled.

The remaining assignments relate to the charge. Extracts are taken from the same and, removed from the setting of the whole charge, would appear prejudicial, some of which are erroneous statements; as, for instance, the court made a mistake complained of in the third assignment in stating that this was a bill filed by O. S. Mynatt against Belle Weaver and others undertaking to collect a balance on an automobile, which complainant claims he sold defendant, etc., etc. We think the court got right in subsequent statements, and that the jury was not misled in the matter as to what the issues were. The court was stating the insistence of cross-complainant in the 4th assignment, which we think was covered by the pleadings. Of course any misrepresentation of the condition or equipment of the automobile was a cause affecting the signature or execution of the mortgage, and this statement of the contentions of the cross-complainant was not a statement as to any effect as claimed.

We have examined the remaining extracts of the charge as they are set out in the remaining assignments. As they modified each other, and as they were modified by other statements in the charge, and as applied to the facts of this case, we do not think they contain any reversible error.

In the 5th assignment the complaint is that the court told the jury that if Rector Mynatt fraudulently misrepresented "anything" in reference to the sale of the automobile, etc., etc. If he said this in the 5th, in the 6th he said: "If you believe at the time that Rector Mynatt fraudulently misrepresented the condition, value or equipment," etc., etc. We think the proof did show un-

der the circumstances a fraudulent misrepresentation as to its condition and equipment, and even, under the circumstances, as to its value, though the jury were cautioned in the 10th extract that "representations of value are generally regarded as mere opinions or seller's statements, and when such is the case, are held not to constitute fraud." However, in the closing paragraph he correctly indicated that it was not always so, though in language which, if untrue, and their verdict was not otherwise sustainable, might have been regarded as somewhat prejudicial. It would be fraudulent if Rector represented the car as worth $125 because of any condition or equipment it was represented to possess, and had it turned out in a dáy or two that it was not worth anything like that amount because of the lack of such equipment or condition.

Taking the whole charge together, we think the jury were reasonably apprised of the rules of law governing their investigations, and as we are satisfied that they have reached the merits of the case we do not think their verdict should be disturbed. The judgment of the court is therefore affirmed, with costs against appellants and their securities.

Portrum and Thompson, JJ., concur.