MÉTROPOLITAN LIFE INS. CO. v. HEDGEPATH.

(*Nashville*, December Term, 1944.)

Opinion filed February 3, 1945.

MOORE & EWING, of Nashville, for plaintiff in error, (defendant below).

LEROY MCGREGOR, of Nashville, for defendant in error, (plaintiff below).

MR. JUSTICE NEIL delivered the opinion of the Court.

The defendant in error, Mrs. Hedgepath, sued the Metropolitan Life Insurance Co., in the Circuit Court of Davidson County, averring that she was the beneficiary in a life insurance policy which was issued by the defendant upon the life of her husband, Ogle V. Hedgepath. There was a judgment entered in her behalf for five hundred dollars, the face of the policy. The defendant's chief defense, which was raised in a special plea, is that it did not owe the plaintiff for the reason that the policy was procured by fraud in that the insured contemplated and intended to commit suicide at the time the policy was issued to him on November 1, 1941, and that he did actually commit suicide on November 19, 1941.

Under the special plea it was averred that it would be "against public policy" to permit plaintiff to recover. There is no provision in the policy invalidating it on the ground of suicide "whether sane or insane" as is usually found in insurance policies. The trial judge, in a memorandum opinion overruling defendant's motion for a

new trial, found that the defendant had failed to carry the burden of proof upon the issue raised in its special plea. The Court further found that, while deceased had stated he intended to commit suicide at the time, and before, the policy was issued, he did not intend to defraud the Insurance Company.

The case was appealed to the Court of Appeals and errors were assigned. That Court affirmed the judgment of the lower court. The Court in reviewing the evidence held, as did the Circuit Judge, that the deceased intended to commit suicide but he did not intend to defraud the Company when the policy was issued to him.

*Certiorari* was granted by this Court and the case is before us upon the single proposition of whether or not the acts of the deceased in threatening to take his life before the policy was issued, and which threats were unknown to the defendant, were such as would defeat the policy. The case has been orally argued and elaborately briefed. The question has excited our very great interest and it is not without difficulty. Before passing to a consideration of the legal problem, it is important that we state the facts out of which it grows.

The Court of Appeals found the following facts: "The plaintiff and Ogle V. Hedgepath had been married about fourteen years. Both had been married before and she had a policy on her own life and one on the life of a son by her first marriage, both of which had been issued by the defendant company. The deceased was fifty-six years of age and had been married before and had seven children by his first wife from whom he had separated. The deceased shot himself with a pistol at his home on the afternoon of November 19, 1941, and died on the same day." The Court further found that deceased had several times between January, 1941, and the date of his

death indicated by his actions and remarks an intention to commit suicide and he did kill himself on the above mentioned date or about nineteen days after the policy was issued.

The defendant introduced several witnesses who stated they heard deceased over a period of about a year threaten to end his life. Some of the expressions used were "I won't be here much longer" and that he was "going to cross the River Jordan". He stated to another witness that the Lord had directed him to do it. It is further shown that he placed rings around several dates on a calendar, indicating that he intended to end his life on that date. The witness Mrs. Daisy Seat, an intimate friend of the Hedgepaths and who lived across the street from them, stated she heard deceased on several occasions threaten to commit suicide and that she saw him place a ring around the date of November 19, 1941.

 While several witnesses testified that they had never heard deceased make threats to end his life, we think, as did the Court of Appeals, that this is entirely negative testimony and is of little, if any, probative value.

In *Jackson* v. *Loyal Additional Ben. Ass'n*, 140 Tenn. 495, 205 S. W. 318, the policy holder committed suicide and the Association resisted payment upon that ground. There was no provision in the by-laws or constitution of the Association with reference to suicide. The insured died by his own hand twenty years after the policy was issued.

In the instant case the policy contains no provision invalidating it because of suicide. The deceased killed himself nineteen days after the policy was issued. The evidence shows conclusively that he had placed a ring around November 19th on a calendar and stated "That is the day", and on the afternoon of that day he ended

his life. He had marked dates on the calendar at other times and had made threats that on such a date he would end his life. Upon these undisputed facts the case does not turn upon the intention of deceased to defraud the Company, but the question presented is, whether or not his repeated threats and acts amounted to a fraud upon the Insurance Company such as would invalidate the policy.

In the case of *Jackson* v. *Loyal Association, supra,* the plaintiff was permitted to recover upon the ground that the policy issued insured the holder thereof against death from any cause and that, since suicide was not mentioned as an invalidating clause, it was not against public policy to hold the company liable on its contract. Mr. Justice Green, speaking for the Court, said, 140 Tenn. at page 498, 205 S. W. at page 319, "The cases affirming liability do not cover instances where the insurance was procured with the intention of committing suicide. *It is recognized that such conduct would be a fraud on the insurer, and defeat the policy.*" (Italics ours.)

Authorities need not be cited to sustain the proposition that fraud, when fully made to appear, vitiates all contracts into which it enters. While the question of intention to defraud often involves a question of fact, which may be proven by acts, conduct, and circumstances, nevertheless, one may be guilty of fraud by his silence, as where it is expressly incumbent upon him to speak concerning material matters that are entirely within his own knowledge.

Now in the instant case the insurer had no knowledge of the conditions surrounding the deceased, his unhappiness, his threats to end his life, his acts of making rings around dates upon the calendar as indicating the time of his suicide. It cannot be seriously controverted

that had the insurer known of these things it would never have issued the policy.

We are therefore constrained to hold that the deceased's threats to end his life, and his final death by his own hand on the date he had expressly designated, was a fraud on the defendant. The language used in the *Jackson Case,* ''Such conduct would be a fraud on the insurer, and defeat the policy'', is applicable here. The contract of insurance cannot be saved upon the theory that the deceased ''did not intend to defraud the Company''. This is a conclusion that is not based upon any fact found in the record. We must give consideration to the declared intention of the insured, which was unknown to the Insurance Company, and its legal effect upon the rights of the parties. In these circumstances, we hold that the contract was completely nullified as a matter of law and the insurer was thereby discharged from its contractual obligation.

It results that the judgment of the Court of Appeals is reversed and the case dismissed.