# MRS. JANE SHEEGOG ANDERSON v. CLAUDE W. NICHOLS AND WIFE.—286 S. W. (2d) 96.

Middle Section. September 9, 1955.

Petition for Certiorari denied by Supreme Court. December 9, 1955.

504

Lon P. MacFarland, Jerry Colley, and Henry C. McCall, Jr., all of Columbia, for plaintiff.

William H. Dale and Pride Tomlinson, Jr., both of Columbia, and William C. Sugg, of Nashville, for defendants.

SHRIVER, J.   The parties will be referred to as complainant and defendants as they appeared in the Court below.

## I

The original bill herein was filed on October 15, 1953 by complainants, Jane Sheegog Anderson, and Jane Anderson Harris, who are respectively the mother and sister of William Sailer Anderson, deceased, whose body was found in Kentucky Lake in Humphreys County, Tennessee, on October 13, 1953.

The original bill alleges that the said William Sailer Anderson died intestate, apparently, on October 12, 1953.

On January 7, 1954, pursuant to an order of Court, an amended bill was filed wherein it was alleged that, since the filing of the original bill, the will of William Sailer Anderson, deceased, was found and admitted to probate, and that letters testamentary had been issued to Jane Sheegog Anderson as executrix and sole beneficiary of the estate of said deceased son.

Among other things, the bill alleges that, on October 9, 1953, and prior thereto, William Sailer Anderson owned certain real estate and personal property in Maury Coun-

ty, Tennessee, known as Brookwood Farm and Brookwood Farm Restaurant which was valued in excess of $150,000.

That, on October 13, 1953, defendant, Claude W. Nichols, filed for registration in the Register's Office of Maury County, Tennessee, a deed which purported to be executed by William Sailer Anderson, conveying all of the property described in the bill as Brookwood Farm and Brookwood Farm Restaurant to defendant Nichols and wife. Said instrument, on its face, appeared to have been executed by the said William Sailer Anderson on October 9, 1953 in consideration of $1 cash in hand paid and the exchange of other real estate.

The original bill as amended, prayed that the deed above mentioned be declared void as having been obtained by fraud and misrepresentation and for a grossly insufficient consideration, and that all right, title and interest of the defendants in and to said real estate and personal property be divested out of them vested in complainants.

It is also alleged that, at the time of the conveyance in question, Anderson was in such confused and distraught mental condition that he did not understand or comprehend the import and meaning of the transaction.

The bill prayed for an injunction, which was issued, and for a writ of attachment. Subsequently a receiver was appointed.

The answer, in rather broad and general terms, denies all the material allegations of the bill.

The cause was tried before Chancellor R. E. Lee, at Columbia, Tennessee, and resulted in a decree wherein the prayers of the bill were granted and the deed to the property in question was declared null and void.

From the decree of the Chancellor, the defendants perfected an appeal to this Court and assigned errors.

## II

## Assignments of Errors

Assignment No. I, is as follows:

"The Chancellor erred in adjudicating that the paper writing dated and acknowledge on October 9, 1953 by Anderson conveying Brookwood Farm & Restaurant to the defendants was not the free act and deed of the said William Sailer Anderson and in declaring the same void and for nothing held."

Assignment No. II asserts that the Chancellor erred in overruling the objections of the defendants to the testimony of Dr. Morris Adair, Leroy Bess, Milton Milner, Leroy Montgomery and Raymond Skiles as to statements made by Anderson to them.

Assignment No. III avers that the Chancellor erred in holding certain circumstances shown by the record to be badges of fraud.

Assignments Nos. IV, V, VI, and VII complain of certain findings of fact by the Chancellor and assert that these findings constituted errors.

Assignment No. VIII asserts that it was error for the Chancellor to hold that Nichols' failure to offer proof of a witness, Mrs. Garnand, created a presumption that her testimony, if introduced, would operate to the prejudice of Nichols.

Assignment No. IX is to the effect that the Chancellor erred in holding that Nichols was onerated with the burden of proving the bona fides of the transaction and that he failed to do so.

## III

On the morning of October 13, 1953 the body of William Sailer Anderson was found floating in Kentucky Lake, at Trotter's Landing, in Humphreys County, Tennessee. Anderson's car was found submerged in the lake near by.

On this same day defendant, Claude W. Nichols, appeared at the Court House in Maury County and registered a deed dated October 9, 1953 which, on its face, transfered to Nichols for $1 and the exchange of certain properties in Nashville, Columbia and Shelbyville, Tennessee, the Brookwood Farm and Restaurant in Maury County which belonged to the deceased William Sailer Anderson.

Complainant charged that Nichols plotted and schemed to acquire Anderson's valuable Maury County property by fraud and deceit, for a grossly inadequate consideration; that Nichols went to Memphis to contact Anderson and represented that he wanted to buy Anderson's property; that his plan of deceit made a show of his supposed wealth to impress Anderson that he could buy the property for cash and, thereafter, led Anderson to think that he was going to purchase the property for $200,000 cash, while, it is charged, Nichols planned to pawn off or trade to Anderson three pieces of heavily mortgaged property in Nashville, Columbia and Shelbyville for Anderson's unencumbered property of much greater value; that Nichols, in order to create a screen of respectability around his plan of fraud, had title opinions on his three pieces of property prepared on September 9, 18, and 28, 1953, and deeds prepared and executed conveying the property to Anderson, before Anderson saw the Nashville and Shelbyville properties. It is further urged that Nichols prepared an option agreement of two or more

pages and attached them together with removable fasteners and induced Anderson to sign and execute this said option, and that, thereafter, Nichols changed the contract, or option, to a deed, by substituting the first page, and secretly held this changed paper until Anderson was deceased.

It is further claimed that Nichols planted the three title opinions and three deeds from himself and wife, and his unsecured note for $2,000, in Anderson's automobile to make it appear that Anderson had entered into the trade and had accidentally driven into the lake where he drowned.

Complainant insists that Anderson did not knowingly accept the deeds from Nichols, and that he did not knowingly sign a deed to his valuable Maury County property, and, further, that he did not accidentally drive into Kentucky Lake where he met his death.

It is pointed out that, after deducting the mortgages and unpaid taxes on Nichols' property, the value of the equities therein was only a fraction of the value of the Anderson property, which, it is charged, was worth at least $100,000 more than the Nichols' property.

Defendants insist that the deed executed by William Sailer Anderson, conveying the property described therein to the defendant, was, in all respects, regular; that it was a culmination of long period of negotiations between the defendant, Claude W. Nichols, and the said William Sailer Anderson, and that the sale to the defendants was made deliberately and knowingly by Anderson, who was fully aware of all the facts and circumstances surrounding said transaction.

It is admitted that the revenue stamps placed on the Anderson deed, was on the basis of $65,000 value, which value, they assert, was fair, reasonable and adequate.

Defendants say that the value of the three parcels of land transferred by the defendants to Anderson were worth $65,000, or approximately that amount. They deny that the consideration paid to Anderson for the transfer of his property is grossly inadequate, or out of proportion to the value of the property conveyed, or that there is anything on the face of the instrument, or otherwise, to indicate that its execution was induced by misrepresentation, fraud, coercion or guile.

## IV

The record shows that pror to August 1953 the defendant Claude W. Nichols became interested in the acquisition of Brookwood Farm after he saw an advertisement or a "for sale" sign thereon.

He went to Memphis on August 20, and had a conversation with Anderson about the property. Later he and Anderson met in Nashville and visited the Brookwood Farm and Restaurant and also visited Nichols' property in Columbia known as the Titcomb Apartment.

On October 8, 1953 Anderson again came to Nashville and they looked at the Anderson property and the Nichols property owned by the defendants in Nashville and in Shelbyville.

On October 9, Anderson acknowledged a paper writing before Ben J. Batts, a Notary Public. This paper contains the signature of William Sailer Anderson and that of the Notary Public. A copy of same is made exhibit "A" to the original bill, and the original document is made exhibit to interrogatories of Mrs. Garnand.

The signature of Anderson and that of the Notary are the only two signatures on the paper writing in question. However, Ben J. Batts, the Notary Public who took the acknowledgment, testified positively that Nichols signed

and acknowledged the same paper in Anderson's presence.

The signature of Nichols did not appear on the paper which he registered on October 13, 1953 at Columbia, and Nichols did not specifically deny in his testimony what Batts had said about his signing same.

The Chancellor, in his opinion, observes that the original answer admits that the property conveyed by Nichols was encumbered to the extent of $22,000 "and probably a few hundred dollars in excess thereof." The amended bill alleges that the same property was encumbered at the time of the alleged transaction, to the extent of $24,000, and it was finally stipulated in the record that the total amount of encumbrances against the three pieces of property owned by the defendants and involved herein, was $24,300.

The Chancellor stated that he could not reconcile the statement in the answer to the effect that the property was encumbered in the amount of $22,000 and a few hundred dollars more, with Nichols' insistence that Anderson knew the amount of the encumbrances.

It is observed in the opinion "Certainly, if Nichols did not know the amount of the encumbrances, Anderson did not know the amount thereof. These statements averred in the answer, when contradicted by the stipulation of fact, constitute a badge of fraud."

While it may be plausibly urged that the mere discrepancy in the number of dollars involved in the encumbrances is not, of itself, necessarily, a badge of fraud, nevertheless, it is true that, nowhere in this record does it appear that Anderson knew, or was ever informed, of the exact amount of the encumbrances, and there is nothing to show that he was informed as to the exact amount of the taxes which were delinquent on the three

pieces of property owned by defendants. It is difficult to believe that he consummated a trade of this Brookwood Farm and Restaurant for three pieces of property encumbered with mortgages and with taxes, and accepted the unsecured note of Nichols for $2,000 as the balance of the consideration, without knowing how much these encumbrances amounted to. In other words it is reasonable to assume that, if he signed a deed instead of an option, he would have insisted on knowing all about the encumbrances he was assuming.

This Court is of opinion that the Chancellor was correct in holding that these facts, when not satisfactorily explained, did constitute a badge of fraud.

Again, as the Chancellor observed in his opinion, it is not shown that, in any of the conversations that Nichols had with Anderson, there was any discussion of the proposed trade of the Nashville, Columbia and Shelbyville properties for the Brookwood Farm and Restaurant.

In spite of this fact, title opinions and deeds to Anderson were prepared in advance conveying these properties to him.

There is no evidence in this record that these title opinions were ever presented by Nichols to Anderson through the mail or otherwise, prior to his last trip to Nashville, and there is no explanation as to why these title opinions were prepared, and there is no evidence that Anderson had requested them.

The Chancellor states that the preparation of these title opinions before an agreement to exchange the lands, constitute a badge of fraud when unexplained by the defendant. He also states that the preparation of the deeds to the Titcomb Apartment and the Nashville and Shelbyville properties, prior to an agreement to exchange the lands, is, likewise, a badge of fraud.

This Court is not prepared to hold that the mere fact that the defendant Nichols obtained reputable lawyers' opinions as to titles, and had deeds prepared conveying his property to Anderson, in advance of a final agreement, was, necessarily, a badge of fraud.

It would not be unreasonable to conclude that he hoped to be able to persuade Anderson to trade properties and that, in anticipation of this contingency, he had these title opinions and deeds prepared.

It may be said, however, that, in view of all the facts shown by this record, one might reasonably conclude that these circumstances lend weight to the position taken by the complainants.

The Chancellor found as another badge of fraud, the difference in value of the Anderson and Nichols properties.

He found that the Anderson property, on October 9, 1953, was worth at least $125,000, whereas Nichols' property, if unencumbered, was not worth more than $60,000.

Deducting the amount of the encumbrances from a $60,000 value on the Nichols properties would leave equities in those properties of $35,700.

This Court is convinced that the findings of the Chancellor with respect to values is substantially correct, and that the Anderson properties were, in fact, on October 9, 1953, worth more than $100,000, while the equity in the Nichols properties was approximately $36,000. Hence, the difference is value of the properties traded, plus the unsecured $2,000 note of Nichols, leaves a wide discrepancy, which is a badge of fraud, when considered along with the other facts and circumstances shown by this record.

Again, the record shows that the two deeds written by Nichols, or dictated by him to Mrs. Garnand, were fas-

tened together in a manuscript cover by removable fasteners that are generally used to bind together a large number of pages.

The Chancellor said, "I think the use of this removable fastener, in the light of all of the other facts and circumstances surrounding the transaction between these parties, is a badge of fraud."

At least this is another circumstance to create suspicion as to the actions and conduct of the defendant, Nichols, in this transaction.

Again, it is observed in the Chancellor's opinion that the spacing of the last line on the bottom of the first page of the alleged deed is uneven and not the same distance from the line above as the spacing on the remaining portion of the first page. It also appears that the first word in the last line is not directly under the beginning of the other paragraphs on said first page, all of which indicate that the spacing was not done automatically by the typewriter and that the spacing on the first page in the bottom line was hand-controlled and not machine-controlled.

This Court agrees with the Chancellor as to his findings of fact with regard to said first page and the spacing of the typewritten portion at the bottom thereof, and it is true that this is another circumstance which, added to all the others, lends weight to the theory of complainant that the original document prepared by Nichols, and signed by Anderson, was changed before it was offered for registration at the Court House in Columbia.

The Chancellor then finds that the fact that Nichols did not record his deed until after the body of William Sailer Anderson had been found in Kentucky Lake, and the fact that Anderson did not register the deeds which were found in his car, and which were said to have been deliv-

ered to him on October 9th by Nichols, when he had opportunities to register same before he left Nashville, cast suspicion on the transaction.

The record shows that Anderson had some business experience and that all of the Nichols properties were insured, and, yet, no effort appears to have been made to have the insurance transferred to Anderson.

These are additional circumstances lending weight to the theory of the complainant.

The defendants offered pictures showing that Anderson was at the Woodland Street property in Nashville and the Nance property in Shelbyville. These pictures, according to the testimony of defendant Nichols, were made by Mrs. Brown, who, he said, was something of a camera bug, however, Mrs. Brown testified later that it was not her camera but a camera belonging to Nichols and indicated that these pictures were made at Nichols' instance.

On her recall to the witness stand, Mrs. Brown repudiated many of her statements made on direct examination. One of these was with reference to the pictures, and another was as to how Anderson happened to be at the Woodland Street property and the Shelbyville property. She stated that Nichols requested Anderson on October 8th to go with him by the Woodland Street property where he was having some repairs made before going to Brookwood Farm. The Chancellor believed that Nichols' only purpose in taking Anderson to the Woodland Street property and Shelbyville property was to take his pictures in order to clinch the fact that Anderson saw these properties prior to the alleged transaction.

Apparently, it was Anderson's intention to sell his property in Maury County for cash or its equivalent and return to Memphis to care for his mother and look after her property. The Chancellor poses the question, ''If it

was his purpose to dispose of his property in order that he might return to Memphis to live with his mother and care for her and her business interests, is it not strange that he would suddenly change that purpose without any explanation and scatter his investments in three separate counties in Middle Tennessee?'' Again, ''If he sold his Brookwood Farm to Nichols why did he not tell his tenants about it and why did he leave for Memphis without arranging for someone to look after the properties that he had traded for until his return?''

These matters, unexplained, or without satisfactory explanation, lend weight to the theory of the complainant that this was a fraudulent transaction.

The memorandum agreement shown in the record provides that each party pay the transfer tax and put federal stamps on the deed received. This is a reversal of customary practice and the requirements of law. The Chancellor found that this arrangement constituted a badge of fraud in that it enabled Nichols to set a value on Brookwood Farm and Restaurant of $65,000 and enabled him to cancel the stamps.

Whether this is held to be a badge of fraud or not, it is another circumstance which lends weight to the complainant's theory.

Mrs. Garnand whose deposition had been arranged to be taken on November 4, 1953, did not appear, but instead she left for the west Coast preparatory to a trip to Tokyo, Japan. And the proof shows that Farrington, an employee of defendant Nichols, helped her pack and get away on the very eve of taking this deposition. Then, when interrogatiories were sent to her, she declined to answer. Whether this was arranged between her and Nichols does not appear.

Mrs. Garnand wrote the deeds filed in this record and she is in position to state whether or not the deed of Anderson was, in its original form, an option.

While this Court is in doubt as to whether the defendant Nichols is responsible for Mrs. Garnand leaving Nashville, and her failure to testify, nevertheless, this is another circumstance which adds at least some weight to complainant's theory.

The Chancellor concluded that the badges of fraud pointed out in his opinion, standing in the record unexplained by the defendant Nichols, are sufficient to cast the burden upon him to show the bona fides of this transaction, and he correctly states the rule "A badge of fraud is defined as a fact tending to throw suspicion upon a transaction and calling for an explanation, and when a number of such facts appear in the proof, the resulting effect is to require more persuasive proof upon the party charged with fraud and his good faith in connection therewith than would ordinarily be required. Such badges of fraud, are not fraud in and of themselves, but evidence to establish a fraudulent intent."

As is said in Gibson's Suits in Chancery, Sec. 1011:

"If the complainant's evidence placed the conveyance attacked under a great suspicion of fraud, the burden is then cast on the vendee to prove the bona fides of the transaction, or, at least, remove the suspicion. * *"

As is said in 37 C. J. S., "Fraud," Sec. 115:

"It is not essential that direct evidence of fraud be adduced; circumstantial evidence may be sufficient to establish it, and fraud may be proved by evidence wholly circumstantial, or by a combination of direct and circumstantial evidence, and, where in the face of inferences so strong as to make out a prima facie

case of fraud defendant remains silent, plaintiff should recover. Where fraud is to be shown by circumstantial evidence, such evidence should be considered in its entirety without giving undue importance to isolated facts; although each circumstance alone may be trivial and unconvincing, the combination of all the circumstances considered together may furnish irrefragable and convincing proof of fraud. However, the facts and circumstances proved must clearly establish the inference of fraud.''

Also see 24 Am. Jur. under title ''Fraud and Deceit'', Sec. 257.

■ This Court is of opinion that the Chancellor was correct in holding that the burden of proving the bona fides of this transaction was shifted to the defendants.

Assignment of error No. 2 is to the effect that the Chancellor erred in overruling objections of defendants to the testimony of certain witnesses about statements made by Anderson to them, some of which were to the effect that he said he had given Nichols an option.

■ It was proper for the Court to consider this evidence.

■ As is said in 31 C. J. S., Evidence, Sec. 178.

''Evidence of motive, intent, and knowledge is admissible where such matters are pertinent to the issues in the case.''

■ And in Cannon v. Chadwell, 25 Tenn. App. 42, 150 S. W. (2d) 710:

''Where, regardless of the truth or the falsity of a statement, the fact that it has been made is relevant, the hearsay rule does not apply and the statement may be admitted.''

In Couch v. Hoover, 18 Tenn. App. 523, 79 S. W. (2d) 807, it was held that declarations of a deceased grantor were competent to show his intention to execute a deed rather than a will, and also were competent on the issue of delivery, delivery being a matter of intention.

In re Carson's Estate, 184 Cal. 437, 194 P. 5, 9, 17 A. L. R. 239, it was said:

"The rule is without exception so far as occurs to us at the moment, that whenever the intention, feeling, belief, or other mental state of a person at a particular time, including his bodily feeling, is material to an issue under trial, evidence of such person's declarations at the time, indicative of his then mental state, are admissible in evidence."

In Wigmore on Evidence, Sec. 1777, it is said:

"Declarations accompanying the delivery of a chattel or a deed may help to show whether it is an act of gift, advancement, or otherwise; here the Courts seem to interpret liberally the rule of contemporaneousness."

We think the correct rule is stated in Kelly v. Bank of America, etc., 112 Cal. App. (2d) 388, 246 P. (2d) 92, 96, 34 A. L. R. (2d) 578, at page 585:

"When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and is it immaterial that such

declarations are in the interest of the party producing them.''

## V

The Chancellor decreed that the paper writing dated and acknowledged on October 9, 1953 by William Sailer Anderson conveying Brookwood Farm and Restaurant to the defendants Claude W. Nichols and wife, was not the free act and deed of said William Sailer Anderson and ordered same cancelled, declared void and for nothing held.

He further decreed that the deeds to the three pieces of property owned by Nichols and wife be cancelled by the Clerk and Master and left in the record.

From a careful consideration of this very voluminous record, this Court is of opinion that the evidence preponderates in favor of the conclusions of fact reached by the Chancellor, and that he correctly applied the law.

It results that all assignments of error are overruled and the decree of the Chancellor is affirmed. The costs will be paid by the appellants and their sureties.

The case will be remanded to the Chancery Court at Columbia for such further proceedings as may be necessary.

Affirmed and remanded.

Felts and Hickerson, JJ., concur.