JOSE EMIRO VELA, Appellee, v. CHANDLER O. BEARD et al., Appellants.—442 S.W.2d 644.

Middle Section. December 6, 1968.

Certiorari Denied by Supreme Court May 19, 1969.

Alfred T. Adams, Jr., Glasgow, Adams & Taylor, Nashville, Allen J. Strawbridge, Dresden, for appellant.

Manier, Crouch, White & Herod, Nashville, for appellee.

## THE CASE

SHRIVER, P. J. (M.S.) This is an appeal from a decree of the Chancery Court, Part I of Davidson County, in which complainant Jose Emiro Vela was awarded a

judgment against defendant Harold L. Winstead and against Jean C. Beard, Administratrix of the Estate of Chandler O. Beard, and Beard Motors, Inc. Only defendant Winstead appealed.

Complainant originally filed suit against Chandler O. Beard, Beard Motors, Inc., Harold A. Wiggins and defendant Harold L. Winstead. A pro confesso was taken against Chandler O. Beard and Beard Motors, Inc. and before the case was tried Chandler O. Beard died and the cause was revived against his Administratrix. No process was served on Harold A. Wiggins and a non-suit was taken as to him.

This suit involves the purchase by complainant-of an Oldsmobile automobile from the defendant Chandler O. Beard, doing business as Beard Motors, Inc., and Harold A. Wiggins, a salesman for said automobile concern. No Certificate of Title was ever delivered to the complainant. From statement of defendant's counsel it appears that the car was subsequently repossessed by the defendant, appellant, Harold L. Winstead, who had title to it and who then sold same to another party after the complainant had paid to the defendant Beard the entire purchase price of $3,500.00, plus finance charges, insurance, etc. amounting to a total of $3,840.00.

The proof in the case consisted of the deposition of the complainant and exhibits, together with other documentary evidence, defendant having filed no proof whatever in the case, from a consideration of which the Chancellor held in his Memorandum Opinion filed as a part of the record:

"It is my impression that the answer filed by the defendant Winstead is not only evasive and not respon-

sive to the pleading but is merely an attempt to wash his hands of the entire deal.

I cannot escape the conclusion that the defendant Winstead, from the proof and the pleadings, was cooperating with the defendant, Beard, in their plan to defraud the complainant, which was done.

For the above reasons it is my opinion that the complainant is entitled to a judgment against Mrs. Beard as Administratrix and Harold L. Winstead.''

From the decree implementing the foregoing Opinion the defendant Winstead appealed and has assigned errors.

## THE PLEADINGS

The original bill charges and it is shown that the complainant was, at the time in question, a foreign student at Vanderbilt University, he being a native of Venezuela. He had been in this country for a comparatively short time, spoke English rather haltingly and knew very little about the laws, customs and practices in this country particularly with respect to the purchase of an automobile.

It is charged that prior to February 18, 1963, complainant went several times to the place of business of the defendant Beard Motors, Inc. and talked with the president, Chandler O. Beard, as well as defendant Harold A. Wiggins a salesman at said Used Car Lot relative to the purchase of an automobile.

Defendants showed him a 1962 Oldsmobile and induced him to purchase same for the sale price of $3,500.00 to which was added sales tax, finance charges, insurance, etc. as above stated.

Complainant relied on the advice and recommendations of these men and, upon agreeing to purchase said automobile, he paid $1,500.00 cash and agreed to pay $195.00 per month to Beard Motors, Inc. until the balance was paid in full. He was assured by these defendants, Beard and Wiggins, that he did not need any other documents than the Bill of Sale which they gave him.

After the purchase of the car, complainant in accordance with his agreement, made the payments when due until on November 19, 1963 when he paid the entire balance of $675.00. It is shown that he drove the car to Washington, D. C., and sent the final payment of $675.00 to Beard on the assurance that his title would be sent to him there but he never received the title as promised.

It further appears that Harold L. Winstead had purchased the car in question sometime prior to that time and that he had financed same through the General Motors Acceptance Corporation which corporation held the title certificate to said car at the time it was sold to complainant.

The bill alleges that the defendant, Harold L. Winstead, knowingly allowed the automobile to be sold to the plaintiff and knowingly permitted the policy of insurance with Motors Insurance Corporation, which was in Winstead's name, to be delivered to complainant and used in a scheme to defraud him. Furthermore, that Chandler O. Beard in order to accomplish this scheme wrote on the face of the policy, ''Policy transferred to Jose Vela.'' Said policy is made Exhibit to the bill.

Winstead demurred to the bill but the demurrer was overruled and he then filed his separate answer in which he averred that he had no personal knowledge as to the

charges in complainant's bill to the effect that he had purchased a 1962 Oldsmobile on February 18, 1963 from the defendant, Beard Motors, Inc. The Answer avers that the automobile mentioned in the bill was the sole property of the defendant by virtue of his purchase of same in 1961 and that defendants Beard Motors, Inc. and Harold A. Wiggins were without authority to sell the same to the complainant or to any person and were without authority to execute and deliver a bill of sale for the automobile. It is further averred that the automobile was continually titled in the name of the defendant since the date of its purchase in 1961 and was subject to the lien of General Motors Acceptance Corporation to secure a loan made by it to the defendant at the time of its purchase.

The answer denies knowledge of the transactions of complainant with the defendants Beard and Wiggins and avers that defendant had no knowledge or notice, and did not participate in any of the alleged transactions and dealings with the complainant. Many of the allegations are neither admitted nor denied but strict proof is demanded.

As to the allegations of fraud the answer states:

"This defendant denies the allegations of fraud made by complainant against him in Paragraph IV of the original bill. He denies that he knowingly allowed any policy of insurance to be used in any scheme to defraud the complainant. He denies that he, either directly or through the defendant Chandler O. Beard or through any other person, fraudulently deceived the complainant into believing anything in connection with said insurance policy.

\* \* \* \* \* \*

And now having fully answered each and all of the allegations of the original bill, this defendant for further answer says that at all times mentioned in the original bill, the automobile described therein was the sole property of this defendant subject to the lien of the General Motors Acceptance Corporation and that the title was so evidenced on the title certificate."

The answer is signed by attorneys for the defendant and is not sworn to.

## THE FACTS

In his deposition complainant testified that after he entered Vanderbilt as a student he frequently passed the car lot operated by defendant Chandler O. Beard. He said:

"I used to see this car when I had just come to Nashville. It was in September or October. I used to see the car in the parking lot at the dealer place, Beard place, Oldsmobile '62."

He further testified that it was the following February 17th or 18th, 1963 that he bought the car. In answer to another question he stated: "Yes, sir. I saw it, I saw this car, this automobile, almost every day. I used to walk around the block just to see the car."

He detailed his conversations and dealings with the defendants Beard and Wiggins and filed several exhibits to his testimony, one of which was a memorandum showing the list price of the car, together with the down payment of $1,505.00, leaving a balance of $2,100.00. Exhibit II is the invoice or bill of sale to complainant signed "Beard Motors, Inc. by Harold H. Wiggins", showing a total charge of $3,840.00.

Exhibit V is an insurance policy issued by Motors Insurance Corporation to Harold L. Winstead on a 1962 Olds Air Conditioned Star Fire and on the back of said policy is written in pen and ink, "Policy transferred to Jose Vela." Complainant testified that he was about to leave Nashville to go to Washington, D. C. and inquired of the defendant Beard about the title to his automobile and was assured that the Bill of Sale was all he needed. He then inquired about an insurance policy and at this point Beard handed to him the above described policy and when he questioned the fact that it was in Winstead's name Beard assured him that that would be all right.

After he arrived in Washington he had a minor accident with the car and, upon investigation by the police, he showed them this policy. They communicated with the defendant Harold L. Winstead by mail, whereupon, he, Winstead, sent the correspondence to Chandler O. Beard. Subsequently the car was taken out of the possession of complainant and it is asserted by counsel for the defendant that Winstead repossessed it and sold it to another party. However, there is no proof in the record explaining how or why he sent the communication from the Washington police to Beard and why or how he then procured possession of the car and returned it to Tennessee. An affidavit was filed by the defendant in seeking to have a re-hearing and permission to file proof after the case was decided against him, but this is not such a part of the record as to enable us to consider it except to determine whether or not the Chancellor abused his discretion in not re-opening the case to allow the defendant to amend his answer and give his deposition or appear and testify after the case had been submitted and decided.

The only enlightenment on the facts of the case offered by the defendant Winstead is the answer filed by his counsel and which does not attempt to explain any of these matters but merely denies the material averments in the bill.

The final decree in this cause, among other things, recites as follows:

"This cause came on to be heard on the 26th day of March 1967, before the Honorable Ned Lentz, Chancellor, Part I, Chancery Court of Davidson County, Tennessee, upon the pleadings, evidence filed and argument of counsel, and at the conclusion the Court advised that it was not satisfied with the Answer filed by the defendant, Harold Winstead, whereupon, without objection, the Court took the same under advisement to allow the defendant, Winstead, to take additional proof and/or file further pleadings, if he desired, and also to allow the complainant to take any additional proof he may desire. The only additonal proof filed was a certified Certificate of Title from the State of Tennessee, and this was filed by the complainant. Whereupon, the Solicitors of record advised the Court that no additional proof would be taken."

The decree then recites that the Court finds that the suit has been dismissed as to the defendant, Harold A. Wiggins, a pro confesso entered as to defendant, Beard Motors, Inc., and Chandler O. Beard, and revived after the death of Chandler O. Beard, against the Administratrix, etc. It then refers to the Memorandum Opinion filed in the cause on March 7, 1968, which is made a part of the record, and, after giving credit for the sum of $1,600.00 that appears to have been paid back to the complainant by Chandler O. Beard, and his Administra-

trix, the Court then renders judgment against the Administratrix and Harold L. Winstead for $2,240.00, plus $537.60 interest, for a total of $2,777.60.

The decree further recites that the cause came on further to be heard on April 5, 1968 on motion of defendant Winstead to re-open the proof to permit his deposition to be taken and filed or to permit him to testify orally, and on his affidavit in support of the motion and that the Court finds that the motion is not well taken and is overruled.

An appeal is then granted to this Court.

The Chancellor's Memorandum Opinion is as follows:

## "MEMORANDUM

"In this cause the suit has been dismissed as to the defendant, Harold A. Wiggins. A pro confesso was entered against the defendant, Chandler O. Beard. The cause was revived against Jean C. Beard as Administratrix of the estate of Chandler O. Beard. This pro confesso was never set aside and now stands against Jean C. Beard, Administratrix.

The original bill was sworn to and the answer of the defendant, Winstead, was not sworn to. The only proof taken in this cause was by the complainant.

The answer filed by the defendant, Winstead, leaves many things unexplained, for instance:

1. How did the automobile come into the possession of Mr. Beard?

2. How did his policy of insurance on this automobile come into the possession of Mr. Beard?

3. Who made the payments on the automobile to GMAC after February 18, 1963?

   (a) Were these payments made by the defendant, Winstead?

   (b) Were these payments made by the defendant, Beard?

4. Why didn't the defendant, Winstead, make any effort to regain his automobile from February 1963 to November 1963?

5. Why didn't the defendant, Winstead, answer the letter of the complainant?

6. Why did the defendant, Winstead, send the notice from the Police Department of Washington, D. C., to the defendant Beard?

It is my impression that the answer filed by the defendant, Winstead, is not only evasive and not responsive to the pleadings, but is merely an attempt to wash his hands of the entire deal. I cannot escape the conclusion that the defendant, Winstead, from the proof and the pleadings was cooperating with the defendant, Beard, in their plan to defraud the complainant, which was done.

For the above reasons it is my opinion that the complainant is entitled to a judgment against Mrs. Beard as Administratrix, and Harold L. Winstead.

The costs will be taxed one-half to Mrs. Beard, Administratrix, and one-half to the defendant, Harold L. Winstead.

Mr. Hollabaugh will draw the decree.

          /s/ NED LENTZ, CHANCELLOR

This March 7, 1968."

## ASSIGNMENTS OF ERROR

There are five assignments which it will not be necessarly to set out seriatim.

Assignment I asserts that the Chancellor erred in rendering judgment against the defendant because there is no evidence to support the judgment. We will discuss this assignment hereinafter.

Assignments II and III charge error on the part of the Chancellor in predicating his memorandum in part on the fact that the bill was sworn to and the answer not sworn to, and in predicating his finding of fact in part on the pleadings.

An examination of the record reveals that there is no indication that the Chancellor predicated any finding of fact on the pleadings or that his memorandum was based on the fact that the bill was verified and the answer unsworn, except the single sentence in the memorandum which merely states that the original bill is sworn to and the answer not sworn to and that the only proof in the case was offered by the complainant.

There is no merit in these two assignments and they are, accordingly, overruled.

Assignment No. IV charges error in overruling the appellant's motion to be permitted to testify orally or by deposition which motion was filed after the final decree of the Court was entered.

As is shown by the decree of the Court the cause was heard on the 26th day of March, 1967 and taken under advisement after the Court had announced to counsel that he was not satisfied with the answer filed by the defendant, Harold Winstead, and that the matter was

held in abeyance in order to allow the defendant to take additional proof and to file further pleadings if he desired. However, no additional proof was taken except a Certificate of Title filed by the complainant, and the solicitors advised the Court that no additional proof would be taken. In other words, the defendant elected to rely on his answer which the Court had specifically stated was, in his opinion, unsatisfactory and unresponsive to the issues, and elected to stand on the record without introducing any proof whatever, in the face of the fact that the bill specifically charged the defendant Winstead and the other defendants with fraud and conspiracy to defraud the complainant.

In this situation the case remained in the breast of the Court from March 26, 1967, until March 7, 1968, at which time the Court filed his Memorandum Opinion which is set out hereinabove.

We find no abuse of discretion on the part of the Chancellor in overruling appellant's motion to be permitted to re-open the case and testify orally or by deposition after the case had been decided. Assignment No. IV is overruled.

■ Assignment No. V charges error in denying appellant's petition to rehear.

As was stated in First State Bank v. Stacey, et al, 37 Tenn.App. 223, 261 S.W.2d 245, a re-hearing in Equity is not a matter of right but is addressed to the sound discretion of the Chancellor and his exercise of such discretion cannot be assigned for error, or reviewed in an Apellate Court.

Hence, Assignment No. V is overruled.

## OUR CONCLUSIONS

Coming now to Assignment No. I, when we consider the questions posed in the Chancellor's Memorandum and the facts and circumstances shown by this record we are inclined to agree with his conclusions.

It is conceded that the defendants Beard and Wiggins defrauded the complainant and it is not necessary to discuss the facts with respect to Complainant's unfamiliarity with our customs, practices, laws, etc. It appears that he first saw the automobile in September or October of 1962 on the Sales Lot of the defendant Beard Motors, Inc. and it was, of course, a logical conclusion that this automobile was for sale by the owners of the lot. The automobile remained there until February the following year when the complainant purchased it and was assured that the invoice, or Bill of Sale given him was sufficient insofar as any record of title was concerned. Then when he asked for an insurance policy, Beard wrote across the face of the policy issued to the defendant Winstead, "Transferred to Jose Vela" and, undoubtedly, he led this young man to believe that this was all that was necessary in order for it to be transferred. Of course, the complainant was negligent in accepting such a transfer but he was misled by the defendants and, as is pointed out by counsel for complainant in their brief, since there is no claim that the automobile had been stolen, it is obvious that the keys to the automobile and possession of it came from the defendant Winstead. In March of 1963 complainant received new license tags from Chandler Beard and the tags were changed on the automobile at that time. Thereafter, the complainant moved to Washington, D. C. and was involved in an accident in October 1963 and, thereafter, complainant received a letter from

Beard enclosing a copy of the police notice which, on its face, showed that it had been sent to Harold Winstead. Complainant then received a letter from Beard to the effect that the license on the automobile was registered in the name of Harold Winstead. And it is noteworthy that these license tags were put on the automobile in March of 1963 after the automobile had been purchased by the complainant and were registered in the name of the defendant Winstead.

Just prior to complainant's departure for Washington he received the policy of insurance above mentioned and, after having written Winstead in November 1963 about the title and having received no reply from him, the automobile was mysteriously removed from Washington, D.C. in February 1964. After November of 1963 when the complainant wrote the defendant Winstead asking about the title, the automobile was removed from Washington and, by statement of counsel for the defendant, it was returned to the defendant Winstead and sold by him. Thus, we see the pertinence and importance of the answers to the questions, how did the automobile come into the possession of Mr. Beard in the first place, and how did the policy of insurance on the automobile come into possession of Mr. Beard, and who made the payments on the automobile to G.M.A.C. after it was sold to the complainant, and why didn't the defendant Winstead make any effort to regain his automobile from February 1963 to November 1963 and why didn't the defendant Winstead answer the letter of the complainant, and why did Winstead send notice from the police department of Washington, D. C. to Beard if there was no connection between them and no knowledge of the transaction with complainant as Winstead's answer asserts?

Having been charged with fraud in connection with the sale of this automobile, which he claims to have been his own all the time, and after undoubtedly having learned that this complainant had been defrauded of his money in the sale of this car, why did the defendant elect to file an answer simply denying knowledge of the transaction and offering no explanation whatever as to why the car was in Beard's possession and why it remained there from the Fall of 1962 until it was sold to the plaintiff in February of 1963, and why no question was made about it until after the accident in Washington?

We agree with the Chancellor that the answer was unresponsive and that in the face of the charges of fraud and the circumstances surrounding this transaction, it was the duty of the defendant to make a full and fair disclosure of the facts if he hoped to escape responsibility in the transaction.

■■ Fraud may be shown by circumstances, and, in fact it is often necessary to resort to conclusions from circumstances in order to show fraud since it is often cleverly disguised. And, as was said in Anderson v. Nichols, 39 Tenn.App. 503, 286 S.W.2d 96 the intention to defraud may be proven by acts, conduct and circumstances, or by the silence of one upon whom it is incumbent to speak concerning material matters which are entirely within his own knowledge.

The opinion in Anderson v. Nichols, supra lays down the following rules which we think are applicable in the case at bar:

"[1, 2] The Chancellor concluded that the badges of fraud pointed out in his opinion, standing in the record unexplained by the defendant Nichols, are sufficient to

cast the burden upon him to show the bona fides of this transaction, and he correctly states the rule 'A badge of fraud is defined as a fact tending to throw suspicion upon a transaction and calling for an explanation, and when a number of such facts appear in the proof, the resulting effect is to require more persuasive proof upon the party charged with fraud and his good faith in connection therewith than would ordinarily be required. Such badges of fraud, are not fraud in and of themselves, but evidence to establish a fraudulent intent.'

As is said in Gibson's Suits in Chancery, Sec. 1011:

'If the complainant's evidence placed the conveyance attacked under a great suspicion of fraud, the burden is then cast on the vendee to prove the bona fides of the transaction, or, at least, remove the suspicion. * * *,

As is said in 37 C.J.S., Fraud sec. 115:

'It is not essential that direct evidence of fraud be adduced; circumstantial evidence may be sufficient to establish it, and fraud may be proved by evidence wholly circumstantial, or by a combination of direct and circumstantial evidence, and, where in the face of inferences so strong as to make out a prima facie case of fraud defendant remains silent, plaintiff should recover." ' "

In Metropolitan Life Insurance Company v. Hedgepath, 182 Tenn. 296, 185 S.W.2d 906, it was held that the intention to defraud may be proven by acts, conduct and circumstances *or by the silence of one upon whom it is expressly incumbent to speak concerning material mat-*

*ters which are within his own knowledge.* In the body of the opinion the Court said that, while the question of intention to defraud often involves a question of fact, it may be proven by acts, conduct and circumstances and *one may be guilty of fraud by his silence.* To like effect is the holding in Simmons v. Evans, 185 Tenn. 282, 206 S.W.2d 295.

In Mynatt v. Weaver, 12 Tenn.App. 60, it was said that under circumstances shown therein the Court would closely scan the record for evidence of fraud and would not sustain the transaction unless all of the circumstances were clearly explained.

■ We think the circumstances shown by this record were such as to require a full, fair and frank disclosure by the defendant of his connection with this transaction and of the facts and circumstances by which the car got into the hands of complainant who was clearly defrauded, in order to relieve himself of the odium of the charge of fraud, and having failed and refused to do so until after the case was decided against him, it was too late to call upon the Court to let him testify as to these facts. His belated affidavit in support of his motion to be allowed to re-open the case cannot be considered by us in determining the question of his liability.

It results that the assignments of error are overruled and the judgment of the Chancellor is, in all things, affirmed.

Affirmed.

Puryear and Todd, JJ., concur.

## ON PETITION TO REHEAR

The Petition to Rehear indicates considerable displeasure on the part of counsel for Appellant with the

Opinion of this Court in the above captioned case, which Opinion was filed December 6, 1968.

The first complaint in the Petition is that this Court apparently found that defendant Winstead repossessed the automobile in question and disposed of it and that this conclusion is not supported by the evidence. As clearly appears in the Opinion, the observation about repossession, etc. was a recitation of the statements of counsel for defendant in his argument before the Court and set forth in his brief and argument filed herein. We find no error or mistake in commenting on assertions solemnly made to the Court in counsel's argument and brief. The so-called finding of fact was not determinative of the issues in this case but was mentioned as shedding light on some unanswered questions concerning Winstead's conduct and his relation to the subject matter and some inferences to be drawn from admitted facts.

The second matter complained of is the assertion in the Opinion that "defendants showed the automobile to complainant", whereas, the proof was to the effect that it was shown to complainant by defendants Beard and Wiggins and not by defendant Winstead.

A casual reading of the Opinion of this Court clearly shows that the allegations of the original bill were being referred to and that the defendants mentioned were Beard and Wiggins and not Winstead. No question is made in the pleadings or proof about the fact that Beard and Wiggins sold the car to complainant and that he had no conversations or personal contact with Winstead. We find no confusion in the Opinion about this fact and no occasion for any misunderstanding concerning it.

There is no substance in Petitioner's argument relative to the observation in the Chancellor's Memorandum that

the Answer was not sworn to and that he and this Court may have predicated their conclusions on this fact.

The Chancellor did find that the Answer filed by Winstead "* * * is not only evasive and not responsive to the pleadings, but is merely an attempt to wash his hands of the entire deal," and we agreed with this conclusion.

As to the complaint in Section VII of the Petition, we stand by the assertion in Our Opinion that "Since there is no claim that the automobile had been stolen, it is obvious that the keys to the automobile and possession of it came from the defendant, Winstead." There is no other reasonable conclusion to be drawn from the uncontroverted facts in the record.

All questions raised by the Petition to Rehear have been considered and found to be without merit, hence, said Petition is overruled.