HILDA A. NUTTING, Plaintiff-in-Error, v. W. C. ALSUP, Admr. of the Est. of Myrtle Alexander, Deceased, Defendant-in-Error. —448 S.W.2d 77.

Middle Section.   June 27, 1969.

Certiorari Denied by Supreme Court December 1, 1969.

468

Richard J. Brodhead and Comer L. Donnell, Lebanon, for plaintiff in error.

Daniel E. Seay, Jr., Lebanon, for defendant in error.

TODD, J. The sole issue involved in this appeal is whether W. C. Alsup should be removed as administrator of the estate of Myrtle Alexander, deceased.

The petition for removal names a number of petitioners, but the petition, and the bond for appeal to this Court, are signed only by Hilda Nutting and her surety.

Removal of the administrator is sought on grounds, (a) that the administrator was appointed without proper notification of next of kin and (b) that the administrator has been guilty of disloyalty to the best interests of the estate and next of kin. The county judge and, on appeal, the circuit judge denied the petition, and the petitioner has appealed to this Court.

The material facts are uncontroverted. Myrtle Alexander died on October 5, 1967. On January 22, 1968, W. C. Alsup, public administrator, was appointed administrator of the estate of deceased and has continued to serve as such to the present time. The petition for removal was filed on July 12, 1968 (over nine months after the death of deceased).

The deceased was survived by two sisters and several nieces and nephews, none of whom received any formal notice in preparation for the designation of the public administrator to act in this case, and none of whom offered to act as administrator prior to the filing of the petition for removal.

The first insistence of petitioner-appellant is that the original appointment of W. C. Alsup was void for non-compliance with certain statutory requirements in connection with designation of public administrators and guardians or that the appointment should be revoked for the same reason. Pertinent sections of the code are as follows:

"30-1501. *Appointment—Term—Oath—Bond.* — The county courts shall have power, at any quarterly session, to appoint or elect a public administrator and a public guardian, who shall hold office for four (4) years, and who, before entering upon his duties, shall take the oath by law prescribed for administrators and guardians, and shall give bond, with good and approved sureties, in such amount as may be necessary and amply sufficient, in the discretion of the court, to protect the estates, funds, and property that may come into his hands, which bond as to amount may, from time to time, by the said county court, at any of its sessions, be increased. [Acts 1870, ch. 98, sec. 1; Shan., sec. 583; mod. Code 1932, sec. 837.]"

"30-1504. *Duty to enter upon administration or guardianship of estates.*—Should any person entitled to the administration of an estate, or to the guardianship of any minor, idiot, or lunatic, fail or neglect to apply to the county or probate court having jurisdiction, and

take out letters of administration and guardianship, within six (6) months after death of the intestate, or within three (3) months after the settlement of the estate by the administrator, it shall be the duty of the administrator or guardian, herein provided for, immediately to enter upon the administration or guardianship of such estates, as the case may be, first applying to the county or probate court, for the necessary letters of administration or guardianship. [Acts 1870, ch. 98, sec. 4; 1870-1871, ch. 114; 1883, ch. 108, sec. 1; Shan., sec. 586; Code 1932, sec. 840.]"

"30-1505. *Letters of administration—When granted.* —The letters of administration may be granted, at any time within six (6) months after the death of the intestate, when it appears that the persons entitled to letters of administration refuse, after legal notice, to administer, and if it further appears that the interest of the estate requires that letters of administration should be granted. [Acts 1883, ch. 108, sec. 1; Shan., sec. 587; Code 1932, sec. 841.]"

"30-1506. *Notice given persons entitled to serve— Effect of non appearance.*—The notice served on those entitled to administer shall fix a day on which they may appear and qualify, and their failure shall be sufficient evidence of their refusal, and the day so fixed shall not be less than two (2) months after the death of the intestate. [Acts 1883, ch. 108, sec. 1; Shan., sec. 588; Code 1932, sec. 842.]"

In the case of Varnell v. Loague, 77 Tenn. 158 (1882) the deceased departed this life on January 25, 1881, the public administrator qualified on February 3, 1881, the petition for removal was presented on February 13, 1881,

but withdrawn and represented on June 23, 1881, within six months of the death of the deceased. The probate court removed the administrator. Upon appeal, the Supreme Court affirmed and said:

"It seems very obvious that the Legislature intended that the parties interested in the estate of an intestate should have six months within which to apply for administration in the usual way, and that the public administrator should have no right to demand letters until the expiration of that time. It does not follow that the grant of letters within the time would be void, nor is it necessary to make an authoritative ruling on the point in this case. But we are clearly of opinion that the next of kin have the right within the six months, to have the estate administered in the ordinary mode, and for this purpose, to apply to the court for a revocation of the letters issued to the public administrator. * * *" 77 Tenn. p. 161.

██ It is true that secs. 30-1505, 1506, supra, were not enacted until 1883, after the date of Varnell v. Loague, but the interpretation placed by the Supreme Court upon sec. 30-1504 (acts of 1870) furnishes a distinct guide for the interpretation of the later-enacted sections 30-1505, 1506. That is to say, letters of administration, granted to a public administrator within six months of the death of deceased and prior to delivery of legal notice and the date set therein for appearance, are not void, but voidable only *at the instance of any person entitled to notice who appears within six months* after death of the deceased and claims his rights as next of kin under the statute. In such a case, as in *Varnell,* the letters of administration are not held void, and acts committed thereunder are not vacated. The letters are revoked, and the

administration proceeds under the supervision of a new administrator. See also Rodes v. Boyers, 106 Tenn. 434, 61 S.W. 776 (1901), decided after enactment of sec. 30-1505, 1506.

To hold otherwise would be to emasculate the inherent power of the probate courts to preserve and conserve the estates of incompetents and deceased persons by making temporary emergency appointments where necessary. If such appointments were held void, no careful person would be available to attempt to act under a void appointment.

▆▆▆ It is clear that the legislative intent of the statutes under discussion was not to deprive the court of its inherent emergency jurisdiction, but to prescribe limits within which interested persons might appear and secure a termination of the emergency appointment in favor of some other administrator more acceptable to the next of kin. The policy set out in the statute is that next of kin have a maximum of six months within which to exercise their prerogatives, and that such period of six months may be shortened by notifying the next of kin under sec. 30-1506. After failure to respond to statutory notice *or* after expiration of six months from the date of decease, next of kin have no right to demand removal of a public administrator because he was appointed within the six months and without notice.

The first insistence is therefore respectfully rejected. This ruling is especially appropriate in the present case wherein the record discloses that the county judge made considerable effort to induce the next of kin to serve or designate an acceptable administrator before resorting to the appointment of the public administrator.

■ The insistence that the administrator has been guilty of misconduct presents a more serious question.

On May 25, 1968 there was filed in the County Court of Wilson County a petition in which W. C. Alsup, administrator, and one Mary Lee Priest were named petitioners and certain individuals were named as defendants. Said petition asserted that the personal estate of Myrtle Alexander was inadequate to pay claims of creditors and that deceased was the sole owner of one tract of about 8½ acres and a tenant in common of two other tracts of 35 acres and 50 acres respectively. Said petition further averred that the joint petitioner, Mary Lee Priest, was the owner of a part interest in the latter two tracts; and that:

"* * * Your Petitioner, Mary Lee Priest, avers that she should have had the same interest in the lands as her cousins, Guy Wright and Mrs. Gladys Wright. However, she avers that in error, a clause was included in her deed to Elese Alexander as appears of record in Deed Book 143, page 475, in the Register's Office for Wilson County, Tennessee. * * *"

The foregoing quotation suggests an effort to reform a deed to allow Mary Lee Priest to participate in the proceeds of sale of certain property, but no specific prayer for such relief is included in the petition.

The petition prayed that all three tracts of land be sold for partition, that the debts of the estate be paid out of the proceeds of the sale of the interest of the deceased therein, and that the remainder of the proceeds be distributed according to the allegations of the petition which is sworn to by both W. C. Alsup and Mary Lee Priest. The petition is signed by Daniel E. Seay as solicitor for

both petitioners. In the above mentioned suit to partition and sell the real estate of deceased, the administrator was joined as a co-complainant with one whose claims in the real estate were questionable, and whose claim required the assertion of propositions of fact and/or law which were likely to be resisted by other claimants. By swearing to the joint bill, the administrator certified the correctness of the contentions of his co-complainant and thereby placed himself in the position of maintaining the asserted rights of his co-complainant against other claimants of the same property who are also next of kin and beneficiaries of the estate. Thus the actions of the administrator are not adverse to the interests of the estate or its distributees *as such*, but it is adverse to other interests of the distributees arising outside the personal estate, i.e., their rights to a share of the surplus of the realty after payment of debts.

In Bower v. Lunney, 27 Tenn.App. 87, 178 S.W.2d 91 (1943) this Court affirmed the removal of an administratrix where:

"* * * She was the ardent supporter of her brother in his claim to the estate. She used her position to further his interest to the injury of the rightful owner. There could be no harmony of action between her and the owner." 27 Tenn.App. at p. 109, 178 S.W.2d at p. 99.

It cannot be denied that the administrator has acted beyond the duties of his office in espousing the cause of a claimant to property he is seeking to sell for debts. His action in so doing is not justified by a claim of convenience in obtaining jurisdiction of necessary parties. The joinder of the administrator and his co-complainant was undoubtedly the idea of, and certainly the workmanship

of his counsel, which mitigates considerably any reflection upon the administrator.

The principal objection to the joint suit for partition and sale is that the same attorney represents the administrator and the claimant. Without asserting that there is any overt impropriety in the representation of the administrator and Mary Lee Priest, the net effect of the filing of the joint suit and joint representation is such as to undermine confidence of the distributees in the impartial administration of the estate.

It is therefore the opinion of this Court that the continuation of the administrator in office should be conditioned upon a prompt resolution of this shadow upon his impartiality. That is to say, the administrator should be required to withdraw and dismiss the said partition suit without expense to the estate of defendants therein, and to file a new suit to sell the real estate of deceased without joining with any heir, cotenant or claimant as complainant. The administrator should have counsel who does not represent any heir, cotenant or claimant of said real estate. If the administrator is able and willing to and does comply with these conditions promptly, then he should not be removed and the petition for removal should be dismissed.

If the administrator should fail to comply with the foregoing conditions, then he should be removed and a suitable successor named.

As indicated herein, the judgments of the circuit and county courts are modified. As modified, they are affirmed. The cause is remanded to the county court for further proceedings. The costs of this proceeding, including this

appeal, are taxed against the administrator to be paid by him as part of the expenses of administration of the estate.

Modified, affirmed and remanded.

Shriver, P. J. (M.S.), and Puryear, J., concur.