# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

**FILED**

**November 19, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ESTATE OF ALLA MAE LOCKE | ) | Davidson Probate No. 93P-908 |
| SIMMONS, DECEASED. | ) | |
| | ) | |
| ALFORD T. LOCKE, | ) | Appeal No. 01A01-9608-PB-00366 |
| | ) | |
| Petitioner/Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTINE LOCKE FOSTER, ET AL., | ) | |
| | ) | |
| Defendants/Appellants, | ) | |

APPEAL FROM THE PROBATE COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE FRANK G. CLEMENT, JR., JUDGE

For the Defendants/Appellants:

Allen Shoffner
Shelbyville, Tennessee

For the Petitioner/Appellee:

John C. Shofner
Shelbyville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

**OPINION**

This case involves the petition of the administrator of an estate to probate an allegedly stolen will. The trial court found that the will had been stolen and admitted the will to probate. We affirm.

In 1991, the decedent, Alla Mae Locke Simmons ("Decedent") and her husband, an elderly couple, were cared for by a nurse, Ann Moore ("Moore"). The Decedent gave Moore a power of attorney to help her manage her affairs. During this time period, on August 5, 1991, the Decedent executed a valid will.

Subsequently, a police investigation revealed that Moore had defrauded the Decedent out of most of her liquid assets. She misused the Decedent's credit cards, wrote large checks for her own benefit, and cashed out some of the Decedent's life insurance policies, pocketing the proceeds. Subsequently, the Decedent and her husband were admitted to the hospital. Both Decedent and her husband were in poor condition; Decedent was unable to speak. The Decedent died on June 18, 1993. Moore absconded and has not been located.

Shortly after the Decedent's death, Appellee Alfred T. Locke ("Locke"), her surviving brother, filed a Petition for Appointment of Administrator, in which he prayed to be appointed administrator of Decedent's estate. In the petition, he swore that a diligent search had been made for a will, that none had been found, and that Decedent had died intestate. Locke subsequently filed an accounting.

In 1995, a distributee of the estate filed a petition to compel distribution of the estate. The petition alleged that Locke was stalling distribution of the estate because he believed a will existed which would give him a greater share of the estate.[1] Citing this as a conflict of interest, the petitioner also asked that Locke be removed as administrator. Locke subsequently filed a petition to probate a lost or stolen will. Nineteen distributees ("Distributees") joined in filing an answer and counter-petition, once again seeking Locke's removal as administrator.

At the bench trial in this cause, the parties stipulated that the Decedent had executed a valid will on August 5, 1991. Over objection from the Distributees, Locke read into evidence portions of a deposition taken from Decedent's sister-in-law, Eleanor Simmons ("Simmons"). Simmons testified in her deposition that, on August 6, 1991, she rode with Decedent and Moore to the bank, where Decedent had a safety deposit box. Simmons stated that Decedent and Moore entered the

---

[1]Under the will, Locke was the sole beneficiary still alive and would inherit the entire estate.

bank with Decedent's will and came out without it. On cross-examination, Simmons stated that Decedent had a temper and had been known for writing new wills when angered. She also testified that Decedent's practice was not to tear up a will when she wished to revoke it, but rather go to her attorney to have a new one drafted. Simmons acknowledged that she was not certain that the will had been taken into the bank or deposited in the safety deposit box.

Nashville Metropolitan Police Detective Patricia Goodman ("Goodman") testified at trial that she investigated Moore's treatment of Decedent and Decedent's husband. In her investigation, she discovered that Moore had defrauded Decedent out of most of her liquid assets, misusing credit cards, writing large checks for her own benefit, and obtaining the cash value of life insurance policies. Goodman testified that Decedent and her husband were both in poor shape when she first saw them; the Decedent was incoherent at the time. When Goodman saw them again on May 15, 1992, Decedent could not speak. Goodman called paramedics, and both Decedent and her husband were admitted to the hospital. Moore was to be prosecuted, but she absconded and could not be found.

Locke introduced into evidence safety deposit box access records indicating that on August 6, 1991, Moore had opened Decedent's box. Locke argued that this was done to place the will inside. The records also showed that Moore subsequently opened the box on August 20, 1991. Finally, on September 20, 1991, Moore cleaned out the box and closed the rental contract with the bank.

At the trial, the Distributees read into evidence part of the deposition of Wayne Detring, the attorney who had prepared the August 5 will for Decedent. Detring had a copy of the August 5 will in his files. Detring testified that he never saw Decedent again after execution of the will. The court also admitted into evidence an order dated May 12, 1992, appointing a conservator for Decedent.

From this evidence, Locke argued that Decedent executed a will on August 5 and, with Moore, placed it into the safety deposit box on August 6. At some point after, Moore stole the contents of the safety deposit box, including the will. The will was never found because it had been stolen by Moore, not because it had been revoked. In addition, as of May 12, 1992, until the time

2

of her death, June 18, 1993, Decedent was mentally incompetent and therefore could not have legally revoked the August 5 will during that time period.

The Distributees argued that Simmons was not certain that the will was placed into the safety deposit box on August 6 and had no idea whether it was later removed by Moore or the purpose for which it was removed. The Distributees argued that Moore may have removed it at the Decedent's behest and given it to her. The Distributees also maintained that Moore, named as executrix of Decedent's estate in the August 5 will, had no motive to steal the will.

At the conclusion of the evidence, the trial court ruled from the bench. The court found that the will had been placed in the safety deposit box and that it could have been removed by Moore on August 20 or September 20. The court also found that, as of May of 1992, Decedent was incompetent. The court then posed the question, "[D]id she [Decedent] with sound mind revoke the will sometime between August 20 of '91 and May of '92?" The court answered its own question:

> The evidence is clear to me that Ann Moore was a disloyal servant and engaged in criminal activity and clearly did not have the best interest of Mr. or Mrs. Simmons [Decedent]. I am convinced that if she withdrew documents from the decedent's safety deposit box for ill motive, that she would have had no motive to take the will to Mrs. Simmons [Decedent] for her future action.

* * *

> I'm of the opinion that she [Moore] closed it [the safety deposit box] not for the benefit of the decedent, and I'm convinced that the criminal activity of Ann Moore interceded in this matter and clearly rebuts the presumption that the decedent intentionally and competently revoked a will that she had written previously.

The court credited Simmons' deposition testimony that Decedent always had a new will written when she wished to revoke an earlier one and the deposition testimony of Wayne Detring that he never saw Decedent again after the execution of the August 5 will as further evidence that Decedent had never revoked the August 5 will. The court accepted the will into probate. From this decision, the Distributees now appeal.

The Distributees raise several issues on appeal. First, they contend that the court erred by admitting Simmons' deposition into evidence rather than requiring Simmons to testify in person. They also assert other evidentiary issues, arguing that the trial court erred by allowing answers to leading questions in Simmons' deposition to be read into evidence, by reading and considering a letter written by Simmons containing hearsay and inadmissible opinions, and by allowing certain testimony by Goodman which the Distributees claim was hearsay. The Distributees claim that the

3

trial court's findings were not supported by the evidence and that the trial court erred in admitting the will to probate. Finally, they argue that Locke should have been judicially estopped from offering the will for probate and should have been removed as administrator of the estate.

Our review of this case is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Absent error of law, the trial court's decision will be affirmed, unless the evidence preponderates against the factual findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Rulings on the admissibility of evidence are normally within the trial court's discretion, only to be reversed upon an abuse of that discretion. *Dockery v. Board of Prof'l Responsibility of the S. Ct. of Tenn.*, 937 S.W.2d 863, 866 (Tenn. 1996).

The Distributees argue first that the trial court erred in admitting Simmons' deposition testimony. Without Simmons' testimony, there is no evidence that the will was placed in the safety deposit box. A trial court may under some circumstances admit a non-party's deposition testimony as substantive evidence instead of requiring the witness to testify in person. Rule 32.01 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

> At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
>
> * * *
>
> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment . . . .

In admitting Simmons' deposition testimony, the trial court remarked, "I will allow the introduction [of Simmons' deposition into evidence] because of the fact that her deposition reveals that she [Simmons] is of some years, and upon Mr. John Shofner's [Locke's attorney's] representation that her health and years would make her present attendance unreasonable." Under Rule 32.01(3)(C), we find no abuse of discretion in the trial court's admission of Simmons' deposition testimony into evidence.

The Distributees also allege that the trial court should have sustained their objection to certain questions in Simmons' deposition as being leading. While the Distributees' brief does not state clearly the questions in dispute on appeal, from the pages in the record cited, they apparently

4

appeal the trial court's admission of the following question:

> MR. JOHN SHOFNER: "And you [Simmons] were with them [Decedent and Moore] on this occasion?"
>
> Answer: "Of course. I didn't read the will. I didn't see it, but I knew the purpose of it."
>
> "You had, to your knowledge, just -- she [Decedent] had, to your knowledge, just executed a will?"
>
> MR. ALLEN SHOFFNER: That's leading, Your Honor.

The trial court found that the question to be "borderline" leading but permitted it nonetheless.

On appeal, it must be noted that "[i]t is within the sound discretion of the trial court whether to allow a party to examine a witness by leading questions." *Wilkerson v. Altizer*, 845 S.W.2d 744, 747 (Tenn. App. 1992). On review, "unless (the appellate court) can see that the question was not only clearly leading but clearly prejudicial, the action of the (trial court) will not be interfered with." *Hale v. State*, 198 Tenn. 461, 476, 281 S.W.2d 51, 58 (1955); *see* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). The only question objected to on the pages of the record cited was whether, at the time of the August 6 trip to the bank, the Decedent had "just executed a will." However, the parties stipulated that, on August 5, the Decedent executed a valid will. Therefore, the Distributees cannot demonstrate prejudice from the admission of this testimony into evidence.

The Distributees also objected to a letter by Simmons which Locke attempted to enter into evidence. The letter was not filed as a trial exhibit, but the trial court read parts of it in order to rule on the Distributees' hearsay objections. Although the Distributees can point to no part of the record which indicates that the trial court was influenced by the letter in making its ruling, they argue that the trial judge should have sustained their hearsay objection without reading any portion of the letter. In the absence of any demonstrated prejudice, the Distributees' argument is without merit. In addition, from a practical standpoint, it is difficult to see how the trial court could have ruled on the Distributees' objection without reading any portion of the letter. The trial court is affirmed on this issue.

The Distributees assert that the trial erred in allowing Goodman to testify that her

5

investigation into Moore's treatment of Decedent was prompted by a phone call alerting her to the problem. The trial court found that the statement was not hearsay because it was not admitted for the truth of the matter asserted. Rather, the statement merely indicated what prompted Goodman to investigate. In response to the trial court's question, Goodman stated that she would have investigated the alleged mistreatment regardless of the veracity of the phone call. Thus, the phone call was not hearsay and the trial court did not err in admitting it. *See* Tenn. R. Evid. 801(c); *Anderson v. Nichols*, 39 Tenn. App. 503, 518, 286 S.W.2d 96, 103 (1955) (holding that hearsay rule does not bar testimony that is relevant regardless of its truth or falsity).

The Distributees also contend on appeal that there was insufficient evidence to support the trial court's findings of fact and rebut the presumption that the will had been revoked. When a will cannot be found at a testator's death, a presumption arises that the will has been revoked. *In re West*, 729 S.W.2d 676, 678 (Tenn. App. 1987). This presumption can be rebutted, however, by showing "that the testator did not have custody and control of the will after execution, or that he had lost his testamentary capacity for a period before his death and that the will was in existence at the time the loss of competency occurred." *Id.* The loss or destruction of a will by means other than revocation by the testator can be proven by positive or circumstantial evidence. *Haven v. Wrinkle*, 29 Tenn. App. 195, 212, 195 S.W.2d 787, 794 (1945). To set up a lost or stolen will, the petitioner must demonstrate that the testator executed a valid will, show that the testator did not revoke the will, show that the will cannot be found after a diligent search, and prove both the contents and the substance of the will. *See Shrum v. Powell*, 604 S.W.2d 869, 871 (Tenn. App. 1980). Finally, the proof necessary to establish a lost or stolen will must be clear, cogent, and convincing. *See id.*

In this case, there is no dispute as to the validity of the will or as to its contents and substance. The Distributees contend that the evidence presented was inadequate to rebut the presumption that the will was revoked. The trial court found that Simmons' deposition testimony, the safety deposit box access records, the fact that Decedent never wrote a new will, and Moore's obvious criminal behavior were clear and convincing evidence that Moore or Decedent placed the will in the safety deposit box, that Moore later removed it, and that the will could not be found later because Moore either kept or destroyed it. The Distributees note that the order appointing a conservator for Decedent made no finding of incompetency. However, Detective Goodman testified that when she first saw the Decedent, she was incoherent, and when she saw the Decedent again on

May 15, 1992, the Decedent was unable to speak. Viewing the evidence as a whole, we find that the trial court did not err in finding the evidence clear and convincing that the Decedent did not revoke the August 5 will. The trial court is affirmed on this issue.

The Distributees also maintain on appeal that Locke was judicially estopped from offering the will for probate. In his sworn Petition for Appointment of Administrator, Locke stated that he had searched diligently for a will and none had been found. Subsequently, Locke petitioned the trial court to admit the stolen will for probate. At the trial, the trial court asked Locke's attorney why Locke changed positions on the issue of the existence of a will. Locke's attorney explained that Locke had not known of the will or of Moore's activities until his appointment as administrator of the estate. In closing arguments, Locke's attorney began arguing the issue of judicial estoppel. The trial court interrupted him and stated, "I agree with you. I'm going to let you off the hook on that part of your argument." The Distributees did not object to the fact that Locke did not take the stand to testify on this issue.

Judicial estoppel prevents a party from denying the truth of a former sworn statement in any later proceeding, plea, or motion. *See Terox Corp. of Am. v. Carr*, 52 Tenn. App. 595, 602-03, 376 S.W.2d 735, 738-39 (1964). But "[i]t is well settled that judicial estoppel does not apply where there is an explanation showing such statement was inadvertent, inconsiderate, mistaken or anything short of a willfully false statement of fact." *Id.* at 603-04, 376 S.W.2d at 739. Locke's attorney explained to the trial court's satisfaction that Locke's original sworn statement that no will could be found and that Decedent died intestate was due to lack of knowledge, not an attempt at fraud. On appeal, The Distributees argue that Locke himself should have been called to testify to that effect. However, the Distributees point to no place in the record in which their counsel objected to the trial court's acceptance of the explanation given by Locke's attorney without Locke's testimony. If the Distributees failed to object at trial to the trial court's ruling in the absence of testimony by Locke, this issue will not be considered on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *Ammons v. Bonilla*, 886 S.W.2d 239, 243 (Tenn. App. 1994); *Guess v. Maury*, 726 S.W.2d 906, 922 (Tenn. App. 1986).

Finally, the Distributees contend that the trial court should have removed Locke as

administrator of the estate because as the beneficiary of the will had a conflict of interest. This issue is without merit. *See Nutting v. Alsup*, 60 Tenn. App. 467, 474-76, 448 S.W.2d 77, 80-81 (1969) (removal not necessary when "the actions of the administrator are not adverse to the interests of the estate or its distributees *as such*, but it is adverse to other interests of the distributees arising outside the personal estate, i.e., their rights to a share of the surplus of the realty after payment of debts").

The decision of the trial court is affirmed. Costs are assessed against the Appellants, for which execution may issue if necessary.


_____
_____**HOLLY KIRBY LILLARD, J.**


**CONCUR:**


_____
**ALAN E. HIGHERS, J.**



_____
**DAVID R. FARMER, J.**

8