IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2008 Session

**JOYANN E. BUTLER v. JAMES MICHAEL BUTLER**

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-07278-04      Jerry Stokes, Judge**

_____

**No. W2007-01257-COA-R3-CV - Filed December 23, 2008**

_____

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as
Modified; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and
HOLLY M. KIRBY, J., joined.

Stuart B. Breakstone and Kathy Baker Tennison, Memphis, Tennessee, for the appellant, Joyann E.
Butler.

Martin W. Zummach, Germantown, Tennessee, for the appellee, James Michael Butler.

**OPINION**

In this divorce proceeding, Wife appeals the trial court's decision not to enforce the parties'
Marital Dissolution Agreement, the trial court's distribution of the marital assets, and the trial court's
failure to sanction Husband for failure to comply with the discovery rules. After Wife filed for
divorce, the parties executed a Martial Dissolution Agreement. The trial court, however, refused to
enforce the Marital Dissolution Agreement because some of Husband's property was damaged while
within Wife's exclusive control. The trial court admitted as evidence Wife's attorney's statement
that he would not permit Wife to damage husband's property. We affirm that attorney's statement
was properly admissible parol evidence and the trial court properly denied Wife's motion to enforce
the Martial Dissolution Agreement.

Wife also argues that the trial court failed to equitably distribute the marital assets and that
the court erred by failing to sanction Husband for discovery violations. This Court affirms the trial
court's division of marital assets, as modified, and its order denying Wife's request for sanctions.

## Issues Presented

Plaintiff/Appellant Joyann E. Butler ("Wife") asserts three fundamental issues on appeal: First, she argues that the trial court erred when it refused to enforce the parties' Marital Dissolution Agreement. Second and in the alternative, Wife argues that the trial court abused its discretion because it did not make an equitable division of the parties' property. Third, wife asserts that her husband, James Michael Butler ("Husband"), failed to comply with the rules of discovery and the trial court erred when it failed to sanction Husband and award Wife attorney fees.

## Marital Dissolution Agreement

The parties were married on March 13, 2002, and Wife filed for divorce on December 30, 2004. The parties executed a Martial Dissolution Agreement (hereinafter "MDA") which Wife filed with the court on August 25, 2006. Wife then filed a Motion to Enforce the Marital Dissolution Agreement as a Contract on October 18, 2006. In his response to Wife's Motion to Enforce, Husband objected to entry of a Final Decree of Divorce alleged that the MDA should be set aside because Wife had destroyed Husband's personal property, the MDA provided that this property would be returned to Husband, and Husband had agreed to execute the MDA only because Wife and her counsel had represented that his property had not and would not be damaged.

The trial court held a hearing and heard proof on the issue whether the MDA should be enforced; the trial court then entered its Order Denying Wife's Motion to Enforce the Marital Dissolution Agreement on March 5, 2007. The MDA provided that Husband would execute a quit claim deed to Wife for real property at 9980 Tracy Road which Wife purchased prior to the marriage. Both Husband and Wife retained possession of the personal property in each person's possession. In addition, the MDA provided that

> Husband shall be entitled to pick up the following personal property at 9980 Tracy Road, Atoka, TN: trophies- stuffed deer, geese and ducks; two (2) end tables; two (2) toolboxes- Snap-On and Craftsman; welder; two (2) cutting torch tanks on cart; steel work table; 12' enclosed trailer; aluminum boat and motor. Additionally, Husband shall be entitled to pick up two (2) air compressors and all of his tools which were his separate property owned prior to the marriage.

The marital dissolution agreement also gave Wife a 2001 Suzuki motorcycle and an original 1987 Monte Carlo motor in Husband's possession.

Pursuant to the MDA, Wife was to receive $7,500.00 in an escrow account and retain sole and exclusive possession of a 2005 Ford F250; Husband was to retain sole and exclusive possession of a 2003 F350, and each party was to be solely liable for the debt of their respective cars. Each party was also to be responsible for the debt that he or she incurred, and neither party was to pay alimony to the other. Finally, Husband was to receive the business referred to as Butler Outdoor Services, Inc. which included the following assets: 1997 Skid Steer, 1988 International, 1996 GMC

bucket truck, 252 Stump Grinder, 502 Stump Grinder, Chainsaws, climbing gear accessories, Skid Steer attachments- dirt bucket, grapple bucket, forks, tracks, 1999 BC2000 Vermeer tree chipper, 1996 2070 Mobark Tree Chipper, 2003 Ford F350 Dually.

In support of his Response to Wife's Motion to Enforce, Husband submitted an affidavit stating the following: (1) that he was served an injunction 11 days after Wife filed for divorce that forbid him from returning to the marital home to collect his personal property, (2) at the time of the injunction Husband's personal property was in excellent condition, (3) before signing the marital dissolution agreement he asked Wife's attorney why he should sign the agreement before receiving his property in Wife's possession and Wife's attorney stated that he would not permit Wife to destroy Husband's property, (4) that he signed the MDA agreement on the assumption that his property was still in good condition, (5) after he signed the marital dissolution agreement he was permitted to retrieve his personal property, (6) when he recovered his property on August 26, 2006, he discovered that much of his property was damaged or destroyed.

At the hearing, both Husband and Wife testified. Husband explained that at the settlement negotiations Wife's attorney told him that "[Wife] had not tore anything up and [Wife's attorney] would not let her." Husband , however, testified that when he left his aluminum boat at the marital home in December 2004 there were no holes in it, but when he retrieved it in August 2006 it had 21 holes and looked as though someone had taken a small metal instrument and punched holes in the bottom. When Husband went to retrieve his property from the trailer where Wife had stored his other possessions, he discovered that it looked as though everything had just been thrown into the trailer. Husband alleged that two end tables that he had kept since his childhood had two deep scratches in them that could not be repaired. In addition, he claimed that several tools were missing from the toolboxes that he had left at the marital home.

Husband presented pictures of his stuffed wild game trophies that were also damaged. His two mounted geese had missing eyes, broken wings, one tail was broken off, one's neck was broken, stuffing was sticking out of one's chest, and feathers were missing and bent. Three mounted deer had their heads deformed and ears broken; their necks were scarred, scratched, and missing plugs of hair. Five mounted ducks had broken wings, missing eyes, and their necks were bent backwards, breaking them open and exposing the breast bone to the stuffing. The trial court noted that Wife testified at her deposition that the stuffed wild game trophies were "fine," but the court found that this property was not fine, and "it wasn't normal wear and tear."

Wife testified that she moved Husband's property into a trailer near the marital home by herself in late January or February of 2005; she claimed that she locked the trailer after the move and treated Husband's property as though it were her own. Wife claimed that she did not touch Husband's property between the time that they signed the MDA on August 23, 2006 and when Husband came to pick up his property on August 26, 2006, except to carefully tow the trailer where the property was stored across a bumpy segment of her land. At her deposition, Wife stated that the stuffed wild game trophies were in fine shape when she put them in the trailer, but at the hearing

Wife testified that during the marriage the geese had broken tails which she had super-glued and a duck's wing was broken.

Wife also testified to the condition of Husband's property which she did not put in the trailer. Wife admitted that Husband's toolbox remained in the garage at their marital home; at her deposition, she confirmed Husband's statement that the toolbox was full of tools, but at the hearing Wife testified that the tool boxes had "more open space than there was tools in it." Wife claimed that both toolboxes were locked when Husband moved out, but that she believed Husband had visited the garage after the restraining order was issued because she found one toolbox unlocked. As for Husband's aluminum boat, Wife testified that the boat remained at the marital home, she and her son patched holes in it after Husband moved out, and Husband gave that boat to her son. Wife admitted, however, that she had noticed that the boat again had holes in it two weeks prior to negotiating and executing the MDA.

Based on the evidence, the trial court denied Wife's Motion to Enforce the Marital Dissolution Agreement and scheduled a hearing at which the parties submitted proof as to how the trial court should equitably divide their assets.

## I.    Enforcing the Marital Dissolution Agreement

Wife asserts three separate reasons why the trial court erred when it denied Wife's Motion to Enforce the Marital Dissolution Agreement. Wife first claims that Husband did not sufficiently allege the elements of fraud in his Response to Wife's Motion to Enforce Marital Dissolution Agreement as a Contract. Wife secondly alleges that the trial court violated the parol evidence rule because it considered representations made during settlement negotiations that contradicted the terms of the MDA. Wife also argues that the trial court should have enforced the MDA because Husband failed to carry the burden of proving any defense to enforcing the contract.

A marital dissolution agreement is a contract and is subject to the rules governing the construction of contracts. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (citing *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001)). The Tennessee Supreme Court has recently confirmed that marital dissolution agreements may be enforceable as contracts even if one party withdraws his consent prior to the entry of judgment. *Id.* at 499. The interpretation of a contract is a matter of law, and our review of the trial court's decision not to enforce the contract is, therefore, *de novo* on the record with no presumption of correctness as to the trial court's conclusions of law. *Id.* at 498 (citing *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003)).

Likewise, the trial court's determination that Husband carried the burden of proving fraud is reviewed *de novo*. Because Husband sought to set aside the marital dissolution agreement, he had the burden of proving fraud by clear and convincing evidence. *Elchlepp v. Hatfield*, No. E2007-01154-COA-R3-CV, 2008 WL 2925712 at *3–4 (Tenn. Ct. App. 2008)(*perm. app. pending*). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). If the trial court's factual

determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

### i. Pleading fraud

Wife argues that Tennessee Rule of Civil Procedure 9.02 required Husband to particularly plead the allegations of fraud in his Response to Wife's Motion to Enforce the Marital Dissolution Agreement as a Contract ("Husband's Response"). Assuming *arguendo* that Rule 9.02 does apply, we find that Husband did state his allegations of fraud with sufficient particularity to comport with Rule 9.02.

Husband's Response sets forth his allegations of Wife's fraudulent conduct. The relevant provisions are as follows:

> 2. What is in dispute is the fact that it is alleged by Defendant that subsequent to the parties entering into a [MDA], the Plaintiff, Joyann Butler, destroyed certain property of Mr. James Butler.
> 3. This destruction came after Mr. Butler was assured by counsel for Joyann Butler that he would not permit Mrs. Butler to cause any damage whatsoever to Mr. Butler's property.
> 4. Alternatively, it is alleged that the destruction of the property was performed before the entry into a [MDA].
> 5. Regardless of when the destruction occurred, if true, it makes the contract unenforceable.
> 6. First, if the destruction occurred after entry into the [MDA] and done purposefully, delivery of the items in question pursuant to the contract could not occur and the contract could not be consummated. The contingency which has to be assumed is that the property which was to be exchanged would not be destroyed after the document was endorsed.
> 7. Alternatively, if the destruction and damage to the property were done before the [MDA] was executed by the parties, at least one party (Mrs. Butler) had superior knowledge to that failure of a condition and so again, the contract is unenforceable.
> . . . .
> 11. Defendant would tend to agree with may of Plaintiff's arguments <u>if</u> Defendant had not been assured by Plaintiff and Plaintiff's counsel at the settlement conference that Plaintiff's counsel would not permit Plaintiff to cause any damage or harm to any of the items which were to be exchanged. For only this reason, Mr. Butler executed the [MDA] without first receiving his promised property.
> 12. To allow Mrs. Butler to rely upon a [MDA] when she knew or should have known that the items in question were damaged intentionally either before the contract was endorsed or after the contract was endorsed based upon the assurances

of her counsel that no damage would fall to the specified items, would be to reward a clear breach of contract.

Tennessee Rule of Civil Procedure 9.02 requires that "averments of fraud or mistake" state the circumstances constituting fraud or mistake "with particularity." Tenn. R. Civ. P. 9.02. (2006). The Advisory Commission Comment states that Rule 9.02 does not require a "lengthy recital of detail," but that *"general* allegations of fraud and mistake are insufficient." Tenn. R. Civ. P. 9.02 cmt. This Court has commented that, at a minimum, averments that a person is making false and misleading statements should identify the actor and the substance of each statement. *Strategic Capital Res. Inc. v. Dyan Tire Indus., LLC*, 102 S.W.3d 603, 611 (Tenn. Ct. App. 2002). It is not necessary, however, that the allegation employ the word "fraud." *Sullivant v. Americana Homes, Inc.*, 605 S.W.2d 246, 249 (Tenn. Ct. App. 1980) (complaint may sufficiently charge fraud without employing the word "fraud" because fraud is a "legal conclusion drawn from facts").

The Tennessee Supreme Court has articulated the requisite elements for a common law cause of fraud:

> When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that misrepresentation to his injury.

*Black v. Black*, 166 S.W.3d 699, 705 (Tenn. 2005) (quoting *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66–67 (Tenn. 2001)). We find that Husband's Response sufficiently pleads fraud with particularity. Husband charged that Wife intentionally misrepresented that Husband's personal property would be intact at the time of the property exchange to convince Husband to agree to the MDA; Husband specifically identified that Wife's attorney made the allegedly misleading statement at a settlement conference when he assured Husband that "he would not permit [Wife] to cause any damage whatsoever to Mr. Butler's property," and it is also clear from Husband's Response that he alleges that attorney's statements was either false at the time or later proved to be untrue because Husband's property was damaged when returned to him. *See City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 738 (Tenn. Ct. App. 1996) (plaintiff pled claim of fraudulent misrepresentation particularly where complaint "identifie[d] the time and place of each alleged false representation, and identifie[d] the manner in which each representation was deemed to have been fraudulent"). We find, therefore, that Husband's Response alleged fraud specifically.

### ii. Parol Evidence Rule

Wife also argues that the trial court erred by admitting Wife's attorney's statement in violation of the parol evidence rule. Wife relies upon *Lyons v. Farmers Ins. Exchange*, 26 S.W.3d 888 (Tenn. Ct. App. 2000), to argue that her attorney's statement is only an oral representation made

to induce Plaintiff into the contract and, therefore, may not be admitted if it directly contradicts the contract's written language. Although Wife does not contend that the contract directly contradicts her attorney's statement that Husband's property was preserved, Wife does claim that her attorney's promise contradicts the contract's integration clause.[1] Wife argues that because her attorney's oral representation contradicts the integration clause's language that "[t]here are no representations, warranties, covenants or undertakings other than those expressly set forth herein" her attorney's statement should be inadmissable pursuant to the parol evidence rule. We disagree.

Parol evidence is generally inadmissable to contradict, vary, or alter the terms of a written contract where the written instrument is valid, complete, and unambiguous. *Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn. Ct. App. 1990). Tennessee law has long recognized several exceptions to the parol evidence rule; allegations of fraud are among these exceptions. *Hines v. Wilcox*, 33 S.W. 914, 915 (Tenn. 1896). Particularly, this Court has held that the parol evidence rule does not apply to claims of fraudulent misrepresentation in inducement of a contract. *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 588 (Tenn. Ct. App. 1980); *Lipford v. First Family Fin. Servs., Inc.*, No. W2003-01208-COA-R3-CV, 2004 WL 948645, at *4 (Tenn. Ct. App. Apr. 29, 2004). A claim for fraudulent misrepresentation in inducement seeks to *rescind the contract* on the grounds that one party fraudulently induced the other to enter the contract; such claims are based in tort, and the parol evidence rule does not bar parol evidence to prove the alleged fraud even where the evidence contradicts the written contract. *Compare Brungard*, 608 S.W.2d at 587–88 (Where plaintiff sought to rescind the contract, the court admitted oral representations that defendant would actively promote and finance plaintiff's record despite contract term that defendant was only obligated to send 300 records to radio stations.), *and Lipford*, 2004 WL 948645 at *1–4 (Plaintiff sought to introduce defendant's oral representation that plaintiffs must have life and property insurance to refinance their loan where the terms of the loan contract expressly stated that the purchase of the insurance was not required; the Court admitted the oral representation because plaintiffs sought to enforce the contract as written and show that the oral representations fraudulently induced them to buy insurance.), *with Lyons v. Farmers Ins. Exchange*, 26 S.W.3d 888, 891–93 (Tenn. Ct. App. 2000) (The court did not permit plaintiff to introduce oral representations contradicting the written contract to prove that the defendant *breached* the contract.).

To demonstrate fraudulent misrepresentation in inducement of a contract a party must show: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's

---

[1] The integration clause states the following:

This Agreement contains the entire understanding and Agreement between the parties. There are no representations, warranties, covenants or undertakings other than those expressly set forth herein and each party enters into this contract voluntarily, advisedly, and with full knowledge of the financial condition, nature, character and value of the other's estate. . . .

. . . .

Each party acknowledges that this Agreement has been entered into of his or her own volition with full knowledge and information including tax consequences. . . . Each party acknowledges that no representations of any kind have been made to him or her as an inducement to enter into this Agreement, other than the representations set forth herein.

falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from reliance. *Lowe v. Gulf Coast Dev. Inc.*, No. 01A01-9010-CH-00374, 1991 WL 220576 (Tenn. Ct. App. Nov. 1, 1991). Because we perceive Husband's claim to allege fraudulent misrepresentation in inducement of the Marital Dissolution Agreement,[2] we find that the parol evidence rule does not bar evidence that Wife's attorney told Husband that his property would not be damaged.

### iii.  Burden of proving fraud

After holding an evidentiary hearing, the trial court denied Wife's Motion to Enforce the Marital Dissolution Agreement. In its order, the trial court held that Wife had committed fraud. At the hearing, the trial court reasoned that when Husband asked Wife's attorney about the condition of his property in Wife's possession he inquired not only whether his property would not be destroyed after he signed the settlement agreement but also whether the property was already destroyed. The trial court commented that "[t]his [c]ourt certainly looks at credibility, looks at what's said and how it's said. And I find that to enforce this agreement would be fraud, not only to Mr. Butler, but to this [c]ourt to enforce such an agreement."

On appeal, Wife alleges that Husband failed to prove every element of fraud. Specifically, she asserts that Husband failed to demonstrate that Wife or Wife's counsel made any representation as to the condition of Husband's property at the time the parties executed the MDA. Wife also argues that Husband failed to demonstrate that any representations as to Husband's property were material and that Husband failed to demonstrate that he reasonably relied upon any representations as to the condition of his property in signing the MDA.

A claim for fraudulent misrepresentation in inducement of a contract arises when a person's fraudulent misrepresentations as to a material matter of a contract induce another person to enter into that contract. *Lowe v. Gulf Coast Dev. Inc.*, No. 01A01-9010-CH-00374, 1991 WL 220576, at *7 (Tenn. Ct. App. Nov. 1, 1991). We reiterate that there are five elements to a claim for fraudulent misrepresentation: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from reliance. *Id.* The burden is on the party alleging fraud to prove each of these five elements; this Court will not presume fraud merely because the opposing party intended to perpetrate fraud. *Hiller v. Hailey*, 915 S.W.2d 800, 803 (Tenn. Ct. App. 1995). Claims for fraudulent misrepresentation in inducement of a contract may involve either false statements of past or present facts or false promises made without the present intent to inform. *Lowe*, 1991 WL 220576, at *7. This Court has articulated that "'[i]t is not essential that direct evidence of fraud be adduced; circumstantial evidence may be sufficient to establish it, and fraud may be proved by evidence

---

[2] The Tennessee Supreme Court accepted use of the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" interchangeably because it considered the terms synonymous. *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 (Tenn. 1999).

wholly circumstantial.'" *Vela v. Beard*, 442 S.W.2d 644, 560 (Tenn. Ct. App. 1968)(quoting 37 C.J.S. *Frauds* § 115).

Both Husband and Wife testified at the evidentiary hearing. It is apparent that the trial court's conclusion not to enforce the MDA rests upon the trial court's credibility determinations. Wife argues that she made no representation as to the condition of Husband's property at the time of the settlement conference and she, therefore, did not make any false statement of material fact. Husband testified that he asked Wife's attorney why he should agree to the MDA before seeing his property. From the testimony, it is clear that Husband sought reassurances that his property would not be damaged when he retrieved it from Wife's possession. Husband testified that he actually asked Wife's attorney what condition his property was in at the time of the settlement negotiations. The trial court noted, and we agree, that in assuring Husband that he would not permit Wife to destroy any of Husband's property, Wife's attorney, at the very least, implied that the property was not already damaged and would not be damaged prior to the parties' property exchange. Thus, we agree with the trial court that Wife did make a representation as to the condition of Husband's property at the time the parties executed the MDA.

Wife also argues that the alleged damages are not material and submits evidence that Husband cannot attest to the value of the damaged property. The question of materiality, however, is not simply an inquiry as to the value of the property for which the parties contracted; this Court also considers whether the factor in question induced the challenging party to enter into the contract. *See Piccadilly Square v. Intercontinental Constr. Co.*, 782 S.W.2d 178, 184 (Tenn. Ct. App. 1989); *Cf. Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667, 670–71 (Tenn. Ct. App. 1993) (defendant's representation that car was "new" where plaintiff knew that the car had miles on it when she purchased it, plaintiff testified that she loved the car, there was no difference in operation of the car despite fact that certificate of vehicle registration labeled the car as "used" was not material fact). In this case, there is evidence that the property held sufficient value to Husband to be material. Husband testified that the stuffed wild game trophies were "priceless to [him] because they're - - taken some of those animals in places [he] will never get to hunt again." Husband had kept the damaged end tables since his childhood. In addition, the MDA explicitly lists the stuffed wild game trophies, the end tables, the toolboxes, and the aluminum boat as some of the few personal items that Husband negotiated for during the settlement conference. In addition, Husband testified that he specifically asked Wife's attorney why he should sign the MDA before he got his personal property; Husband's question indicates his unwillingness to sign the agreement if he would not receive these personal items in good condition. We, therefore, find that under these circumstances Husband's receipt of his personal property was a material term of the contract.

Wife also argues that Husband failed to prove that he reasonably relied upon Wife's representation as to the condition of his property in agreeing to sign the MDA. We find no merit to Wife's argument. As we have already articulated, Husband testified that he specifically asked "why should I sign this before I get my stuff back?" Then Husband only executed the MDA after Wife's attorney assured him that he would not permit Wife to destroy Husband's property. Wife does not articulate why she believes that Husband's execution of the MDA did not reasonably rely on Wife's

attorney's assurances, and we find that the circumstances clearly indicate reasonable reliance. Because there is nothing in the record to contradict the trial court's finding that fraud induced the execution of the contract, we affirm.

**Equitable Division of the Assets**

On appeal, Wife argues that the trial court failed to equitably divide Husband and Wife's property in three different ways. We first address Wife's contention that the trial court erred when it awarded Husband half of the appreciation in Wife's separate property without charging Husband for a $16,000 debt on that property. Second, we address Wife's argument that the trial court abused its discretion because it awarded Husband two dogs in the Wife's care during the separation. Finally, we address Wife's argument that the trial court failed to equitably divide the property because Wife's net allocation of assets and debts was $13,270.00 where Husband's net allocation was $51,147.04.

Trial courts are vested with a great deal of discretion when classifying and dividing the marital estate. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007). This Court's role is to determine whether the trial court applied the correct legal standards, weighed the statutory factors logically and within reason, and divided the marital property equitably. *Id.* The valuation of a marital asset is a question of fact determined by considering all of the relevant evidence, and each party bears the burden of producing competent evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. App. 1998). The evidence preponderates against a trial court's factual finding only if supports another finding of fact with greater convincing evidence. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). When the trial court entered its Order on Final Decree of Divorce it declared the parties divorced pursuant to Tennessee Code Annotated § 36-4-129(b) and separated the parties' assets and debts. The trial court determined that Wife's Tracy Road property was Wife's separate property valued at $210,000.00 at the time of the marriage. The trial court also determined that Husband had substantially contributed to the appreciation of the property in such ways as wiring a workshop and digging a three quarter acre pond. The trial court valued the Tracy Road property at $220,000.00 at the time of divorce and awarded Husband half of the property's appreciated value ($5,000). The trial court then determined that Husband's separate property included two air compressors; hunting and fishing equipment; a 1999 Harley Davidson motorcycle (valued at $8,000); a 1994 GMC truck and, thereby, the pending claim with State Farm Insurance Company; various tools; tool boxes; and animal trophies.

The trial court distributed the marital property as follows: Wife was awarded a 2001 Suzuki Motorcycle; her 2005 F-250 truck; $6,000 of a $7,500 escrow account, and $5,000 for the appreciation of her separate, Tracy Road real property. The trial court awarded Husband $5,000 for the appreciation of the Tracy Road property, $1,500 out of the parties' $7,500 escrow account, a gun safe (worth $600.00), a boat motor (worth $500.00), a twenty-eight foot trailer, his 2003 F-350 (worth $10,000.00 with $11,000.00 debt), and the parties' two dogs (valued together at $2,200). The trial court also determined that the parties' tree trimming service, known as Butler Outdoor Services, was marital property and awarded the business and its assets to Husband. Although both parties presented witnesses to testify to the value of Butler Outdoor Services' equipment, the trial court

adopted Husband's testimony as to the value for most of Butler Outdoor Services' assets. The trial court valued Butler Outdoor Services' equipment as follows: Vermeer Stump Grinder Model SC252 (worth $3,500.00), Vermeer Stump Grinder Model SC502A (worth $3,500.00), 1996 GMC Bucket Truck (worth $6,000.00), 1999 Vermeer Chipper Model BC2000 (worth $30,000.00 with $25,000.00 debt), Snapper lawnmower (worth $3,000.00), and set of McLaren tracks for loader (worth $300.00). The trial court did not value the remainder of Butler Outdoor Services' equipment.

The trial court also allocated the debt between the parties. Wife was responsible for most of the debt that she had incurred on her credit cards after the parties' separation. The court also allocated to Wife the $16,000.00 debt to Popwell Contracting that the parties incurred for improving Wife's separate property. The trial court held Husband responsible for the remaining debts, including the debts on Butler Outdoor Services' equipment and a $6,000.00 credit card debt that Wife incurred during the separation.

Wife's first contention is that the trial court erred by awarding Husband half of the appreciation of Wife's house during the marriage without charging Husband with the debt incurred in improving the realty. To the extent that Wife claims that a trial court must automatically assign a portion of debt incurred in improving property where it awards a spouse some of the appreciation in his or her partner's separate property, we disagree that Tennessee follows such a bright-line approach. The trial court's goal is to divide the entire marital estate in an essentially equitable manner. *Owens v. Owens*, 241 S.W.3d 478, 489–90 (Tenn. Ct. App. 2007). This Court does not require that the division of marital property be precisely equal to be considered equitable. *Id.* at 490. Likewise a division of marital property is not inequitable simply because a party did not receive a share of every piece of marital property. *Id.* Contrary to Wife's argument, this Court has articulated that "[m]arital debts should, where possible, follow their associated assets, and should be apportioned by considering the reason for the debt, the party who benefitted from the debt, and the party better able to assume the debt." *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (internal citations omitted). This Court finds no merit to Wife's argument that the trial court erred because it did not specifically assign Husband debt on one specific piece of property; such an inquiry would run contrary to this Court's proposition that "the justness of a particular division of the marital property and allocation of marital debt depends on its final results." *Id.; see Honeycutt v. Honeycutt*, No. E2006-01460-COA-R3-CV, 2007 WL 1836871, at *5 (Tenn. Ct. App. 2007) (*no perm. app. filed*) ("Husband, as is often the case in appeals to this Court concerning a division of marital property, wishes to focus on whether the division as to particular assets was equitable rather than whether the overall property distribution was equitable. We decline to do so as the goal is an overall equitable marital property distribution.").

Wife's second argument is that trial court erred by awarding the parties' two mastiff dogs to Husband. We perceive Wife to first argue that Husband had no interest in the mastiffs because he failed to allege any interest in the dogs in his interrogatory answers. Wife notes that Husband first sought possession of the dogs when he filed a Petition to Relinquish Certain Property. Regardless of Wife's insinuations, it appears from the record that the issue was tried by consent, and the trial court awarded the two dogs to Husband. *See* Tenn. R. Civ. P. 15.02. Wife also insinuates that the

-11-

dogs should be distributed separately from the remainder of the marital property because they were family pets that she and her son cared for and Husband only had a financial interest in the dog's value. Wife, however, does not cite to any authority, and we find none, that the dogs should be considered anything other than personal property. As we have already articulated, this Court looks to the equity of the entire property distribution and will not consider whether the trial court equitably divided particular assets, such as the parties' dogs.

Wife's final argument is that the trial court's entire distribution of the marital assets is inequitable. Specifically, Wife claims that she received a negative net value of $13,270, Husband's net allocation was $51,147.04, and that this final result is unfair and inequitable.[3] As Wife notes in her brief, the fairness of the trial court's property division should be judged upon its final results. *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). A division of marital property, however, is not rendered inequitable simply because it is not precisely equal. *Owens v. Owens,* 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007). The Tennessee legislature has articulated various factors that the courts must consider when equitably dividing marital property; these factors include

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

---

[3] We repeat these numbers from Wife's brief to properly characterize Wife's argument on appeal. Wife's net allocation figures, however, are not based solely upon the trial court's valuation findings; for any asset or debt that the trial court failed to value, Wife used her own estimates.

Tenn. Code Ann. § 36-4-121(c) (2005).

The trial court should distribute the marital property by considering and weighing the most relevant factors in light of the unique facts of the case. *Batson v. Batson,* 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). Because of the wide discretion accorded to trial judges in dividing the marital property, we will generally defer to the trial court's decision unless the decision is inconsistent with the statutory factors or is not supported by a preponderance of the evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). Considering the short duration of the marriage, the contribution that each of the parties made to the Tracy Road property and Butler Outdoor Services, and the value of each party's separate property, we find that the distribution of marital property awarded by the trial court weighs heavily in favor of the husband. After reviewing this record we have determined that awarding wife the entire amount of the $7,500.00 escrow account and the $5,000.00 awarded to Husband for the appreciation in Wife's separate property results in a more equitable distribution. The judgment of the trial court is modified accordingly.

### Sanctions

Wife also submits that the trial court erred by failing to sanction Husband for what it asserts was an abuse of the discovery process. Wife alleges that Husband failed to produce requested documents entirely or produced requested documents in a disarray and without sufficient time to evaluate the documents before trial proceedings. The trial court denied Wife's request for sanctions. This Court strongly defers to trial courts' decisions whether to award sanctions and will not reverse absent an abuse of discretion. *Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn. Ct. App. 1992). Such discretionary decisions should only be set aside on appeal if "the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *Mercer v. Vanderbilt Univ. Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004) (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). Upon review of the record, we cannot say that the trial court abused its discretion in denying any of Wife's Motions to Compel Discovery and for Sanctions.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed as modified. Costs of this appeal are taxed one-half to the Appellant, Joyann E. Butler, and one-half to the Appellee, James Michael Butler.

_____
DAVID R. FARMER, JUDGE